Meserole, etc., v. Sutton

*J. George Lipsius*, for petitioner.

*James Francis Ryan*, assistant city solicitor, for Superintendent of Police.

LEVINTHAL, J., April 29, 1941.—This is a petition for the return of certain personal property confiscated by the police as illegal gambling devices.

The property in question consists of a punchboard and a box of Treasures Mints. The punchboard is trade-marked "Punch-O-Free" and is described thereon as a "Sales Stimulator for Treasures Mint". Lucky punches carry prizes ranging from 15¢ to $15. Detailed instructions for the use of the board are attached thereto.

The following appears on the front:

"Presentation of Treasures Mint wrapper (or a reasonable facsimile thereof) entitles you to participate in *'Punch-O-Free'* for prizes, *absolutely free!*

*"Participation in this game does not depend upon any obligation on part of player."*

The "rules for playing" appear on the back of the board and they read:

"Each person presenting a wrapper of *Treasures Mint* (or a reasonable facsimile thereof) entitles you to participate on *'Punch-O-Free'* for prizes.

"Purchasers and non-purchasers of *Treasures Mints* are privileged to *'Punch-O-Free'* prizes.

"Punches are prohibited to minors.

"Storekeepers reserve the right to limit a participant to one puch [sic] on *'Punch-O-Free'* daily.

"Please do not pay any money to participate on *'Punch-O-Free'* for prizes. *It is absolutely free.*

"This *'Punch-O-Free'* sales board is not to be used for gambling. (Please do not deviate from nor violate these rules.)

"This possession of this '*Punch-O-Free*' sales board and the use of it as set forth is absolutely legal when operated in accordance with these rules and regulations.

"There is no inducement.
"You do not have to participate, if you don't want to.
"There is no consideration.
"It is *absolutely free* to everyone to participate.
"There is no chance taken.
"The award is our advertising money and expense.
"There is no gambling.
"You can't lose anything you may win *free*.
"Every man or woman is eligible to participate in accordance with the rules and regulations.

"Storekeepers selling our mints are restricted to these rules and the *Treasures Mint Company* is not responsible for any violations of these rules."

The confiscated punchboard was seized when found on display in a small candy store operated by one Samuel Fusia. A policeman testified that he purchased a roll of mints for five cents and was allowed to take a punch off the board. He won nothing. The punchboard and box of mints then were confiscated. The box contained a number of loose wrappers representing punches taken off the board but there were no facsimiles. According to Fusia, he received the board from petitioner, unaccompanied by any prize money. Should anyone have made a hit, he was to phone petitioner who would send the money immediately. A small prize of 20 cents had been won on this board but Fusia paid this from his own petty cash on hand.

It is unquestioned that the punchboard is a game of chance and that if valuable consideration is given for the opportunity to play the board it constitutes an unlawful gambling device subject to seizure and confiscation. It is urged, however, that here no such consideration is required inasmuch as the presentation of either a mint wrapper or a "reasonable facsimile" thereof entitles one

to participate. The validity of this contention is the sole issue for our determination.

Although the facts were somewhat different in Commonwealth v. Lund, 142 Pa. Superior Ct. 208 (1940), the rationale of that case constrains us to the conclusion that the issue must be resolved against petitioner. "Bank night" was involved in the Lund case, where a small number of "proxy" cards, entitling the holders to all the privileges of those present in the theatre at the time of the drawing, had been given away free. Apparently, anyone could secure these from the theatre owner or manager, although this feature was not advertised for fear that too many people would apply. In affirming a judgment of conviction for maintaining a lottery, the Superior Court adopted the opinion of President Judge Reader of the Beaver County court which contains an exhaustive discussion of the legality of the so-called "flexible participation lottery". That opinion recognizes that in some States the possibility of participation in a lottery without contributing any valuable consideration therefor is held sufficient to remove the taint of illegality.* However, the rationale of these decisions is disapproved. It is pointed out that the law must be realistic and that the entire scheme must be examined to determine whether an illegal device has not been merely clothed with the semblance of innocence. The practical operation of the device must not be ignored and inquiry must be made into its tendency to inflame the gambling instinct and to corrupt the public morals for profit. The Lund opinion then discusses with approval many cases decided in England and in the various jurisdictions of this country invalidating this "flexible participation" device. We note only a few which appear apposite here.

In Willis v. Young et al., (1907) 1 K. B. 448, 3 B. R. C. 976, The Weekly Telegraph, a London newspaper, made a general distribution of numbered medals. A drawing was held each week and the winning numbers were published in the newspaper. Every precaution was taken to

keep the sale of papers entirely separate from the distribution of medals and the winners were given several days in which to claim their prizes. Many places were maintained in London where persons could read the newspaper without having to buy a copy. When prosecuted for violating the lottery laws, the defense was raised that the scheme was legitimate advertising and not a lottery. In holding that it constituted an illegal lottery, Lord Alverstone observed, inter alia: "Looking at the whole of the circumstances of the case, is it not plain that the circulation of the paper increased by reason of people getting these medals?"

In State v. Bader et al., 24 Ohio N. P. (n. s.) 186 (1922), affirmed 21 Ohio L. R. 293 (1923), defendants operated a very pretentious cafeteria. They advertised in the newspaper that they would give away free an automobile to the holder of the lucky ticket to be drawn later. This advertisement urged persons to secure their tickets. The vehicle was displayed in the cafeteria window, together with a sign urging people to come in and get their tickets. These tickets bore the inscription "Meet me at Bader's" and were given to patrons of the cafeteria and to those few persons who came in and asked for them without purchasing anything. Nevertheless, the scheme was declared illegal as an attempted evasion of the lottery law.

Cases in other jurisdictions holding "Bank Night" illegal as a lottery even where the purchase of a ticket is not required and the drawing is open to those registrants who have paid no admission also are approved in the Lund case. The circumstance that a few persons actually might have participated free is not regarded as controlling where the large body of persons who did pay for admission were paying in part for the chance of a prize.

So, in the instant case, the possibility that a few persons might present facsimiles will not cure the scheme of its illegality where the arrangement is intended to and actually does procure the purchase of mints by a large

group of persons who pay part of the purchase price for a chance at a prize. Only the most naive will believe that the contrary is the case. The device is labeled a *"Sales Stimulator* for Treasures Mint"* and the "rules for playing" describe it as a *"sales* board". Even the name of the mint is descriptive of its part in the arrangement. The box of mints confiscated contained several wrappers but no facsimiles. That such should be the case undoubtedly was within the contemplation of the promoters of the scheme for that result is only consistent with human nature. The instructions limited play to adults, and cleverly so. As stated in City of Wink v. Griffith Amusement Co., 129 Tex. 40, 43, 100 S. W. (2nd) 695, 698 (1936) :

"In fact, the whole plan is built up and made profitable because no normal person likes to 'bum' his neighbor for something, and by an appeal to the psychology of cupidity which makes some take a chance of making large gains by a small outlay. Those who invented and formulated the plan may not have been 'learned in the law,' but their knowledge of mass-psychology was not wanting."

The same thought is expressed in Williams, "Flexible Participation Lotteries" (1938), p. 154, where it is observed:

". . . what man or woman wants to be a 'bum', a 'moocher', a 'cheap skate', a 'piker', or a 'dead head', when a few cents will save his or her social standing?"

It is clear that the possibility of giving away free plays in exchange for facsimiles is a very negligible one. Moreover, in the present case, added safeguards are provided in reserving to the storekeeper the right to limit a participant to one punch daily. Such a regulation is wholly inconsistent with sales stimulation and very evidently would only be enforced against one shameless enough to present a facsimile. Besides, it might be noted also that a "reasonable facsimile" could only be copied from a purchased wrapper. Despite the designation of awards as

"advertising money and expense", it is quite evident that petitioner had little fear of any real "expense" on this account but, on the contrary, had good reason to expect substantial profits.

That the promoters of the device were doubtful of its legality is suggested by the contents of the "rules for playing". There is too much protest against possible violations of the rules and too much emphasis on its purported legality. The printed instructions read like a brief prepared in anticipation of the present case. That we should be unconvinced is not due to any lack of diligence on the part of its formulators, but rather because the scheme, despite its innocent trimmings, is inherently a gambling device. In our opinion, the petition must be dismissed.

### Order

And now, April 29, 1941, the petition for the return of the confiscated personal property hereby is dismissed.

---

\* In accord, see the lower court decision in Park Theatre Corp. v. Mook et al., 87 Pitts. L. J. 101 (C. P. Crawford Co., 1939), which is contra to the holding in the present case. For the reasons set forth in this opinion, we respectfully dissent from the views expressed in that case. Moreover, the Lund case, being a more recent decision of the Superior Court, must be regarded as controlling here.