Edward MONARI, Plaintiff,

v.

**SURFSIDE BOAT CLUB INC., Defend-
ant-Third-Party Plaintiff-Appellee,**

v.

**WESTERN WORLD INSURANCE CO.,
INC., Third-Party Defendant-Appellant.**

No. 9, Docket 72–1392.

United States Court of Appeals,
Second Circuit.

Argued Sept. 19, 1972.

Decided Oct. 17, 1972.

**10**

Edward Cherney, New York City (Friedlander, Gaines, Ruttenberg & Goetz, Harvey P. Rosenberg, New York City, of counsel), for third-party defendant-appellant.

Marvin M. Dingott, White Plains, N. Y., for defendant third-party plaintiff-appellee.

Before KAUFMAN, SMITH and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge.

Western World Insurance Co., Inc. (Western), third party defendant, appeals from a judgment awarded by the district court in favor of Surfside Boat Club Inc. (Surfside) against Western under the property damage provisions of an OLT (Owners', Landlords' and Tenants') liability policy that had been issued by it to Surfside. The judgment was for $3,116.55, plus interest, which represented the amount that had been assessed against Surfside, after a non-jury trial in the main action, an admiralty suit by Edward Monari (Monari) for damages to his boat caused by Surfside's negligent operation of marine equipment, and for $500 in legal fees incurred by Surfside to defend the primary suit.

Western here contends that it was not liable under the policy to indemnify Surfside for the damages assessed against it and not obligated thereunder to defend Surfside in the main action. We reverse the recovery of damages and affirm the award of legal fees.

Since Western's obligation to indemnify Surfside under the terms of the insurance policy issued by Western and in effect at the time of the accident turns on whether the accident fell within the coverage of the policy certain undisputed facts with respect to the accident must first be understood. Surfside is the operator of a Brooklyn boatyard and marina, located on waterfront property leased from the City of New York, where it services, rents and stores boats. As part of its equipment it owned and operated at the time of the accident a self-propelled crane located on land, which was used to lift boats out of and back into the water. The crane consisted of an operator's cab, a boom, motor-driven drum hoist, and a cable extending from the drum in the cab to the end of the boom. Attached to the cable, which hung vertically from the end of the boom, was a square metal frame, from the bottom of which were suspended two slings.

To lift a boat out of the water the operator of the crane, located in the cab, would operate the motor-operated drum with a lever and brake, lowering the cable and frame to a point where the slings could be looped around the bottom of the boat to function as a cradle, one sling fore and one aft, and then activating the motor to wind up the cable. The boat would then be lifted several feet out of the water and if work was to be done on the boat, the crane, which was movable, would be backed inland, carrying the boat to a point where it would be suspended over land. Upon completion of the work, the operation would be reversed and the boat lowered into the water, whereupon the slings could be released and the boat be free for operation on the sea.

On September 21, 1966, Monari, the owner of a 30½-foot sport fishing boat named the ROSEMARIE, brought his boat to Surfside's marina for the purpose of having Surfside lift it out of the water and suspend it over blocks on the land so that Monari could wash the bottom and change the propeller himself. Surfside was then to return his boat to the water. Monari had in the past stored his boat at Surfside's marina and he was a friend of Surfside's owner, Allen Gormely, for whom Monari had performed some dockyard services in the past.

Nothing was to be paid for the service to be rendered to him by Surfside.

At the time of the accident Gormely's brother Augie, a Surfside employee, was in charge of operating the crane. After he moved it to the water's edge and lowered the frame into position, Monari placed the two slings under the boat. Augie then operated the crane and cable to lift Monari's boat out of the water. When the boat reached a point where it was several feet out of the water, the crane began to tilt toward the water, apparently because the boat was too heavy or because the crane had been improperly positioned. Anticipating that the crane might topple, Augie released the brake on the cable, which rapidly paid out, causing the boat to drop suddenly back into the water and to hit another boat. A split second later the metal frame crashed onto the top of Monari's boat, causing it substantial damage. In the meantime Augie, apparently panicking, leaped from the cab of the crane, capping an almost comical mishap.

At the time of the accident Surfside was insured by Western under an "Owners', Landlords', and Tenants' Liability Policy" which protected Surfside up to a limit of $10,000 against property damage caused by its ownership, maintenance, operation and use of its boatyard premises, including "elevators" as defined, except for certain expressly stated exclusions. One of these "Exclusions," ¶(k)(3), provided in relevant part that coverage for property damage liability would not apply to *property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control*.[1] Invoking this exception Western disclaimed liability on the ground that at the time of the accident Monari's boat was in the care, custody and control of the insured, Surfside. The district court, taking the view that the above-quoted language was ambiguous, concluded that "it is inconceivable that the policy language, reasonably interpreted, brings within its ambit of exclusion the subject incident as one in which Surfside has the care, custody or control of the boat, or the exercise of physical control over it." We disagree.

At the outset it must be recognized that the exclusion from coverage of property in the "care, custody or control" of the insured is a fundamental and generally recognized provision, *see generally*, 12 Couch, Insurance § 44:424, et seq. (2d ed. 1963), which is incorporated in an "Owners', Landlords', and Tenants'" (OLT) policy for the reason that the policy's traditional function has been to provide a specific type of coverage, i. e., protection to an owner or lessee of real property against liability due to defective conditions in or on the property itself, 11 Couch, *supra* § 44.372, as distinguished from liability arising from the use of movable equipment or from acceptance of property as a bailee, for which other types of policies are offered.

While the reach and scope of the terms "care, custody or control," may under some circumstances be ambiguous, see Rochester Woodcraft Shop, Inc. v. General Accident Fire & Life Assur. Corp., 35 A.D.2d 186, 316 N.Y.S.2d 281 (4th Dept. 1970); Klapper v. Hanover Ins. Co., 39 Misc.2d 215, 240 N.Y.S.2d 284 (Sup.Ct.1963); International Der-

1. "EXCLUSIONS
*"This policy does not apply:*
&ast; &ast; &ast; &ast; &ast;
"(k) under coverage B, to injury to or destruction of (1) property owned by or occupied by or rented to the insured, or (2) except with respect to liability under sidetrack agreements covered by this policy, property used by the insured, or (3) except with respect to liability under such sidetrack agreements or the use of elevators, property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control, or (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises;
. . . . ."

rick & Equipment Co. v. Buxbaum, 240 F. 2d 536 (3d Cir. 1957) (collecting cases), we fail to find any ambiguity with respect to their plain applicability to the undisputed facts of this case. Where the insured has sufficient possessory dominion over the property damaged, the exclusionary clause applies, see Hardware Mut. Cas. Co. v. Mason-Moore-Tracy, Inc., 194 F.2d 173, 175 (2d Cir. 1952); International Derrick & Equipment Co. v. Buxbaum, *supra*, 240 F.2d at 538. Although it is true that the exclusion has not been applied in situations where an insured causes damage to fixtures solidly attached to the real property of one with whom he contracts to perform services, Rex Roofing Co. v. Lumber Mut. Cas. Ins. Co., 280 App.Div. 665, 116 N.Y.S.2d 876 (1st Dept. 1952), appeal denied, 281 App.Div. 744, 118 N.Y.S.2d 732 (1953); Klapper v. Hanover Ins. Co., *supra*, that is because control of the real property is in the owner and not in the insured contractor. In *Klapper*, where the exclusion was held inapplicable to an insured who damaged windows which he was hired to clean, the court noted that the result "might well be different were the windows detached from the building and given over to the contractor for cleaning," 240 N.Y.S.2d at 286.

■ It is conceded that cases dealing with work done on real property are not controlling here. Both parties, however, contend that Rochester Woodcraft Shop, Inc. v. General Accident Fire & Life Assur. Corp., *supra*, lends some support to their respective positions. In that case a trailer was left on the insured's property and was destroyed there by fire nine hours later, allegedly due to the insured's negligence, although during that time the insured did not move or load the trailer. The court found that there was no proof that the insured undertook to maintain the trailer safely and held that the accident was within the policy coverage despite the existence of an exclusion for property in the care, custody or control of the insured, noting that in other cases which reached the opposite conclusion "the insured had either performed work on the damaged property or had damaged the property while making use of it." 316 N.Y.S.2d at 284. Control was evidently not found there because the damaged property was merely left on the insured's premises. Here, in contrast, the insured consciously took possession and exercised, through the crane, "physical control" over the boat prior to the accident. We conclude that when an insured has actual physical custody of personal property for the purpose of working on it, using it, or moving it, the property is "property as to which the insured for any purpose is exercising physical control" within the meaning of the policy exclusion.

■ Applying these standards, the record is clear that whatever control Monari may have exercised and whatever assistance he may have rendered at earlier points on the day of the accident, once his boat was placed in the cradle of the crane and Augie commenced operation of the crane to lift it out of the water, care and control over the boat was completely, though temporarily, in the hands of Surfside, acting through its agent and employee, Augie. The latter was alone in the cab and in exclusive charge of its controls and of the cable, frame and slings which held Monari's boat. Although Monari had assisted to the extent of looping the slings under his boat, he did not have charge of the lifting operation, which was exclusively left with Surfside's employee, Augie. From that point on Monari temporarily parted with any control over the boat, which then came under the control of Augie during the period when he was to transport it by crane to a nearby point inland. Once the boat had been hoisted out of the water and was suspended in mid-air the ignition keys in Monari's possession were no longer of any present significance, since they could not be used to operate it until Surfside had returned it to the water and the slings had been released. Thus, at the time of the accident Monari's boat was in the custody and control of Surfside.

■ Although the policy did provide coverage against liability arising out of the use of elevators, we agree with the district court that Surfside's movable crane plainly does not qualify as an "elevator," which is defined in pertinent part as "any hoisting or lowering device to connect floors or landings at the premises." [2]

■ ■ There remains the question whether, notwithstanding the policy's non-coverage of the accident, Western was under a duty to defend the main action by Monari against Surfside. Although the issue was not briefed, Western disclaimed any such obligation, pointing to Par. IIa of the policy, which provides:

"II. *Defense, Settlement, Supplementary Payments:* With respect to such insurance as is afforded by this policy for . . . property damage liability, the company shall:

"(a) defend any suit against the insured alleging such . . . destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient."

Western's position is that this clause entitles it, upon the assertion of a claim against the insured, to disclaim liability and decide in its discretion to require the insured to assume the expense of defending the suit, with Western, having thus taken a calculated risk, liable for that expense only if the claim should prove to be within the coverage of the policy. We disagree. It is settled that an insurer's obligation to defend is broader than its obligation to indemnify. Goldberg v. Lumber Mut. Cas. Ins. Co., 297 N.Y. 148, 77 N.E.2d 131 (1948); Rochester Woodcraft Shop, Inc., *supra.* Unless the claim against the insured could not reasonably fall within the policy's coverage, the insurer must defend. Pow-Well Plumbing & Heating, Inc. v. Merchants Mut. Cas. Co., 195 Misc. 251, 89 N.Y.S.2d 469 (N.Y.City Ct.1949). Here Monari's claim hardly met that test. It left open the question of whether the boat was in the care, custody or control of Surfside, which was charged with negligence, and it was not until trial of the primary suit that the determinative facts with respect to that issue was finally elicited. Under these circumstances Western was obligated to defend and for its failure to do so must reimburse Surfside for reasonable expenditures incurred by it in itself defending the suit.

The judgment is reversed as to damages; affirmed as to the award of $500 legal fees.

2. "3. *Definitions:*
\* \* \* \* \*
"(b) *Elevator.* The word 'elevator' means any hoisting or lowering device to connect floors or landings at the premises, unless the named insured owns, rents or controls only a part of the building and does not operate, maintain or control the elevator, whether or not such device is in service, and all appliances thereof, including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery. 'Elevator' does not include a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property, or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet."