La Salle National Bank of Chicago, as Trustee, Plaintiff-Appellee, *v.* The American Insurance Company, Defendant-Appellant.

(No. 55747;

First District (3rd Division)—October 11, 1973.

Clausen, Hirsh, Miller & Gorman, of Chicago, (Frank L. Schneider and James T. Ferrini, of counsel,) for appellant.

Rabens, Formusa & Glassman, of Chicago, (George C. Rabens, of counsel,) for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, the holder of a land trust of certain premises, brought this action in the circuit court of Cook County against the defendant insurance company under an "all risk" casualty insurance policy seeking recovery for loss and damages to a building on those premises. Plaintiff's complaint requested the trial court either to determine that the loss was covered by the policy written by defendant because the exclusion provision of the policy was not applicable to the loss and damages sustained by plaintiff, or alternatively, that the policy, if so required, be reformed to provide by its terms insurance to the plaintiff for the damage sustained by it in accordance with the intention of the parties. After a trial without a jury, the trial court entered judgment for plaintiff for $16,472.79 including prejudgment interest.

In entering judgment for plaintiff, the trial judge gave no specific reasons for his decision. However, because at the time of rendering judgment the judge stated that "the equities are with the plaintiff," it appears that he based his decision upon a reformation of the policy. Nevertheless, we shall consider both of defendant's contentions: that, as a matter of law, plaintiff's loss was excluded by the express terms of the

policy, and that no basis was shown for a reformation of the policy to include the loss suffered.

The policy in question was issued on a one-story commercial building located at 300 Fay Avenue, Addison, Illinois. During the term of the policy the southwest portion of the premises sustained damages consisting of cracked walls, sinking floors, cracked and sagging ceilings, distorted lintels, the shifting of overhead beams, and the shifting of sinks and urinals mounted on walls. The beneficial owners were compelled to pay $14,960.00 to remedy these conditions. The policy, in the portion relevant to this appeal, provided:

"3. *PERILS INSURED:*

This policy insures, subject to the exclusions and conditions of this form and the policy to which it is attached, All Risks of direct physical loss or damage from any external cause.

4. *PERILS EXCLUDED:*

This policy Does Not Insure Loss or Damage Caused or Resulting from:

＊　＊　＊

(p) Marring, settling, cracking, shrinkage or expansion of pavements, foundations, walls, floors or ceilings;　＊　＊　＊."

Coverage was in the amount of $50,000, and the annual premium was $175.

Sam Rothbart, one of the beneficial owners of the premises, testified that he had occasion to inspect the premises in early 1966, and at that time observed only a slight settling and cracking. In October, 1966, he again visited the premises and noticed an additional settling and buckling. In December, 1966, he received a letter of complaint from the building's tenant, and in January, 1967, Rothbart again inspected the premises. At this time he found a severe deterioration. A general contractor was hired to repair the damage. On March 15, 1967, Rothbart notified the defendant of a claim of loss under the policy, which claim was rejected. Rothbart denied telling defendant's adjuster that he delayed making a claim against defendant because he did not believe there was coverage under the policy.

Charles Dann had been Rothbart's regular insurance broker for many years. Rothbart testified that Dann had told him that "for a fair premium I can sell you an all risk policy on your property which is exclusive of fire and miscellaneous damages and this will insure you against all risk and anything else that will happen to the property." Rothbart purchased the policy with Dann acting as broker. It was stipulated that Dann was Rothbart's agent and broker, and not an agent of defendant. Rothbart never read the policy prior to the rejection of the loss claim by defen-

dant. Rothbart testified that there also was a fire, extended coverage, vandalism, and malicious mischief insurance policy on the building.

Charles Dann testified that he obtained the policy in question in 1965 through Paul F. Lange, an agent of defendant. Dann was familiar with the insurance business and had previously handled all risk policies. All such policies with which he was familiar were subject to some exclusions. Dann had received a "speed memo" from Lange offering, subject to inspection of the building, a policy described in the memo as "D. I. C. on the bldg.—All-risk X Fire, E. C., V. M. M., $50,000 with $1000 deductible, annual premium $175." Dann testified that, in describing the policy in question, he had told Rothbart that there was a new type of coverage available by which he could obtain broader coverage than that previously obtainable.

Paul F. Lange, called by plaintiff under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 60), testified that he had 15 years experience in all areas of insurance. The policy in question was issued over Lange's signature, and at the time of its issuance, Lange had an agency agreement with the defendant. The phrase "D. I. C." was a generally used term in the insurance business standing for "difference in conditions," which refers to an all risk form of policy subject to certain standard exclusions as well as any optional exclusions that the particular situation might dictate. The phrase "X Fire, E. C., V. M. M." means excluding fire, extended coverage, and malicious mischief.

W. Robert Zimmer, an insurance adjuster for defendant, testified that he examined the premises in 1967 as a result of a loss claim. At that time he found that a portion of the premises had a collapsed floor and collapsing and cracked walls. The tenant informed him that the situation had existed and had been getting worse for more than a year. Zimmer also testified that Rothbart told him that the loss had not been reported earlier because Rothbart believed that there was no coverage under the policy. Zimmer called in experts to make tests. Over defendant's objection, Zimmer also testified that the absence of grade beams may have contributed to the settling.

Raymond J. Flood, a professional engineer, conducted soil borings at the premises, and testified that two borings, each to a depth of 29 feet, were made. Both borings produced similar findings: proceeding downward from ground level, the first 7½ or 8 feet were clay fill capable of supporting 2000 to 5000 pounds per square foot and termed tough; the next 3½ feet were of brown peat and organic material capable of supporting less than 600 pounds per square foot and termed very soft. The next 4 to 8 feet were organic silt also termed very soft; and the deepest level

was gray clay ranging from soft to very tough. The moisture content of the two middle levels of soil was extremely high.

Doctor Even Vey, a doctor of engineering specializing in soil mechanics and foundation engineering and a professor at the Illinois Institute of Technology, also testified for defendant. On the basis of a personal examination of the premises and the results of the soil borings, he had an opinion that the damage to the building was caused by a settling of the ground level resulting from a consolidation of the underlying soil between a depth of 8 and 19½ feet.

Defendant initially contends that the proof adduced at trial established, as a matter of law, that the damages were "caused by * * * settling * * * of * * * foundations, walls, floors, or ceilings" within the meaning of those terms in exclusion (p) of the policy. Plaintiff, maintaining that the damage did not fall within this exclusion, asserts that the evidence sufficiently established that the damage resulted from a sudden collapse. We must agree with defendant.

■■■ While insurance policies are to be liberally construed in favor of the insured, unequivocal terms must be construed according to their plain meaning with clearly stated exclusions given effect. (*Rubenstein v. Fireman's Fund Insurance Co.* (1950), 339 Ill.App. 404, 90 N.E.2d 289.) And while the determination of a trial court sitting as a trier of fact must be given the same weight as a jury verdict, a reviewing court will not hesitate to reverse where the record discloses a lack of evidence to sustain a judgment. *Foster v. Foster* (1969), 110 Ill.App.2d 128, 249 N.E.2d 114.

■■ In the instant case the conclusion that the damage resulted from "settling" and therefore came within the purview of exclusion (p) of the policy is overwhelmingly clear. The evidence revealed that, in terms of soil mechanics, the building had an unstable base. The middle layers of the structure's supporting ground were quite soft and very moisture laden. Admittedly, the damage arose from a sinking of the floor in the southwest portion of the building. From the evidence adduced at trial, particularly the uncontested results of the soil borings and the testimony of the single expert witness qualified on the subject, the only permissible conclusion is that such sinking was caused by a "settling" within the meaning of the pertinent exclusionary provision in the policy.

Plaintiff's argument that the damage was caused by a "collapse" does not affect this conclusion. It is not at all clear that characterization of the instant sinking as a collapse would operate to bring the loss within the policy since the underlying cause of such collapse would still be a settling of the supporting soil and with it, a portion of the building's

foundation and floors. Furthermore, there was no collapse in the instant case. Illinois law has determined that the expression "collapse" has a distinctive meaning requiring that the loss be sudden and that the structure's basic character be lost. (See *Rubenstein v. Fireman's Fund Insurance Co.*) This did not occur in the present case.

Plaintiff also suggests that the absence of grade beams was the cause of the damage, basing its contention upon the single statement made during the cross-examination of W. Robert Zimmer, defendant's adjuster. The witness was never qualified as an expert on the subject; indeed, he testified that he hired the experts to ascertain the cause. Clearly, his statement, in the light of the evidence adduced at trial, would be insufficient to support a judgment for plaintiff. Moreover, Zimmer merely testified that the absence of grade beams may have been a contributing factor to the settling.

We now turn to defendant's second contention that no adequate basis was shown for the reformation of the instant policy to include the loss suffered.

■■ Reformation of a contract should be allowed only when clear and convincing evidence compels the conclusion that the instrument as it stands does not properly reflect the true intention of the parties, and that there has been either a mutual mistake or a mistake by one party and fraud by the other. (*Booth v. Cole Corp.* (1970), 121 Ill.App.2d 77, 257 N.E.2d 265; *Swan v. Allstate Insurance Co.* (1967), 89 Ill.App.2d 205, 232 N.E.2d 491.) Both elements must be present: the mistake must be mutual and an agreement other than that expressed in the writing must have been reached. (*Pulley v. Luttrell* (1958), 13 Ill.2d 355, 148 N.E.2d 731.) And while an insured's failure to read a policy in his possession is not fatal in a suit for reformation of that policy (*Stoltz v. National Indemnity Co.* (1952), 345 Ill.App. 495, 104 N.E.2d 320), in an action for reformation a written agreement is still presumed to express the intention of the parties. *Jogger Mfg. Corp. v. Addressograph-Multigraph Corp.* (1952), 346 Ill.App. 1, 104 N.E.2d 655.

■■ Under the foregoing criteria, it is apparent that there was no basis for the reformation of the policy in question. Even if plaintiff's agent, Rothbart, was mistaken as to the nature of the coverage, such a mistake was unilateral and would not entitle plaintiff to relief. This is particularly true in the present case where Rothbart had no dealings with defendant or its agents, but rather relied entirely on the representations of his own broker and agent, Charles Dann. Moreover, the testimony of Rothbart reveals that he was not misinformed or mistaken about the nature of the coverage. In testifying as to his conversation with Dann about the pro-

posed policy, Rothbart related that he was informed by Dann that the policy would exclude certain "miscellaneous damages."

The sole proof giving any indication of defendant's intention as to the policy was the "speed memo" prepared by defendant's agent, Paul Lange. That memo described the policy as "D. I. C. on the Bldg.—All-risk X Fire, E. C., V. M. M." From the memo's contents, plaintiff attempts to argue that fire, extended coverage, vandalism, and malicious mischief would be the only exclusions contained in the policy. However, this argument is refuted by the testimony of plaintiff's own agent, Charles Dann. He stated that he had never dealt with an all risk policy which did not contain exclusions. More importantly, the meager information contained in this three-line, handwritten memo is far less than the clear and convincing evidence necessary to compel the determination that the policy did not properly reflect the true intention of the parties involved. See *Hyman-Michaels Co. v. Massachusetts, etc. Co.* (1955), 9 Ill.App.2d 13, 132 N.E.2d 347.

For the reasons stated, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

DEMPSEY, P. J., and McGLOON, J., concur.