INSURANCE COMPANY OF NORTH AMERICA, Plaintiff-Appellee, *v.* ROLLAND E. ADKISSON *et al.*, Defendants (Larry Enderlin, Defendant and Third-Party Plaintiff-Appellant, *v.* Pekin Insurance Company, Third-Party Defendant-Appellee).

Third District   No. 3—83—0223

Opinion filed January 17, 1984.

David R. Hultgren, of Stansell, Critser & Whitman, of Monmouth, for appellant.

Roger L. Williamson, of West, Neagle & Williamson, of Galesburg, for appellee Insurance Company of North America.

Burrel Barash, of Barash, Stoerzbach & Henson, of Galesburg, for appellee Pekin Insurance Company.

JUSTICE WEBBER delivered the opinion of the court:

This appeal lies from an order in declaratory judgment by the circuit court of Warren County finding that the insurance companies involved were not liable for the loss sustained under certain exclusionary clauses in their policies.

The unusual factual situation, which is not controverted by the parties, is as follows. Defendant Larry Enderlin was the owner of a stud bull; he and defendant Rolland Adkisson entered into an oral agreement for the services of the bull to Adkisson's cow herd, the consideration being that Enderlin had the option of buying any calves born to the cows at market price. The record does not disclose the date of the bull's first mission to the Adkisson herd, but it is stated that on October 13, 1980, Adkisson called Enderlin's son to inform

him that the mission had not been accomplished as to three cows. It was then agreed that the bull would be returned to the Adkisson farm. Enderlin's son farmed in partnership with him and had authority to make the agreement.

Adkisson then drove his truck to the Enderlin farm and there secured Enderlin's livestock trailer to the truck. Adkisson was accompanied by his son, and they, together with Enderlin's son, loaded the bull onto the trailer. Adkisson closed the trailer's door, but it is admitted that neither he nor his son secured the latch on the door. He then began towing the trailer to his farm, and about a quarter of a mile into the journey he felt the trailer jerk. He looked back and saw the bull lying in the road, having fallen from the trailer through the unlatched door. The bull later died of his injuries.

Enderlin later filed suit in the circuit court of Warren County against Adkisson and recovered a judgment of $14,000 for the loss of the bull.

Adkisson had a general farm liability policy with the plaintiff, Insurance Company of North America (INA), and Enderlin had an automobile policy with Pekin Insurance Company (PIC). INA filed this action to determine coverage under its policy against Adkisson and Enderlin. Enderlin then by a third-party action brought in his insurer, PIC. The trial court concluded after a bench trial on the uncontested facts that the exclusionary clause in each policy was applicable. Enderlin has appealed, and we affirm.

The pertinent clause of the INA policy excluded coverage for:

"Property damage to *** property occupied or used by the insured or rented to or in the care, custody, or control of the insured or as to which the insured is for any purpose exercising physical control."

The pertinent clause of the PIC policy excluded coverage for:

"Property damage to *** property rented to or in the care, custody, control of the insured or as to which the insured is for any purposes exercising physical control."

▬ The trial court found the exclusionary clauses unambiguous. Relying on *Country Mutual Insurance Co. v. Waldman Mercantile Co.* (1981), 103 Ill. App. 3d 39, 430 N.E.2d 606, the court said there is a two-part test to determine whether liability is excluded under such clauses: (1) the property must be within the possessory control of the insured at the time of the loss, and (2) the property must be a necessary element of the work performed. The court found both conditions fulfilled here. We agree.

These clauses appear to be common in one form or another to al-

most all policies, as found in the reported cases. They are sometimes called "bailment clauses." In *Country Mutual*, for example, the loss was of merchandise on consignment to the insured. One court has described a reason for the exclusion:

> "One purpose is to prevent the general liability insurer from becoming a guarantor of the insured's workmanship in his ordinary operations. Failures of workmanship are a normal business risk which the insured is in the best position to prevent. If such risk be transferred to the insurer via general liability provisions, the cost of general liability coverage will be greater. The 'care, custody or control' exclusion is designed to avoid such result." *Stewart Warner Corp. v. Burns International Security Services, Inc.* (7th Cir. 1975), 527 F.2d 1025, 1030.

Enderlin seeks to distinguish *Country Mutual, Stewart-Warner*, and other cases which have dealt with the "care, custody and control" clause, by arguing that in all those cases the negligent act and the damage coincided, while in the instant case they were separated. His theory is that the negligent act was the failure to latch the trailer door and that this preceded and was separate from the damage which was the fall and consequent death of the bull. He argues that it is not sufficient that the damage occurred while the insured was in possession of the property; he must also have been in possession when the negligent act occurred.

■ In our opinion we need not reach such a hypothesis under the facts of this case. We believe that the bull came into possession and "in the care, custody and control" of Adkisson, the insured, at the time he closed the trailer door. The latching of the door would be at most only cumulative to his manifestation of possession and control and incidental thereto.

All parties have cited *Lakatos v. Prudence Mutual Casualty Co.* (1969), 113 Ill. App. 2d 310, 252 N.E.2d 123. We find it has no application to the instant case. In *Lakatos* some musical instruments belonging to passengers in an automobile were damaged in an accident. The insured was the driver of the car. The exclusionary clause contained not only the familiar "in charge of the insured" language, but in addition "property *** transported by the insured." The court's decision was based upon the latter. No such specific language appears in the policies in the instant case.

Enderlin makes an additional argument concerning the theory which has come to be called "reasonable expectations." He asserts that Adkisson, as a prudent businessman, procured a farm liability policy, and that he, in a like show of prudence, procured an automo-

bile liability policy; that each of them took all possible precautions to protect themselves against losses; yet the insurers are relying on fine print in the contracts to escape liability for Adkisson's claim.

The doctrine of reasonable expectation has as its principal advocate Professor Keeton. (Keeton, *Insurance Law Rights at Variance with Policy Provisions*, 83 Harv. L. Rev. 961 (1970); Keeton, *Reasonable Expectations in the Second Decade*, 12 Forum 275 (1976).) He has defined the doctrine as follows:

> "The objectively reasonable expectation of all applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." (R. Keeton, Basic Text on Insurance Law sec. 6.3, at 351 (1971).)

New Jersey has formulated the doctrine as follows:

> " 'When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally in their favor to the end that coverage is afforded "to the full extent that any fair interpretation will allow." *** Where particular provisions, if read literally, would largely nullify the insurance, they will be severely restricted so as to enable fair fulfillment of the stated policy objective.' " *Linden Motor Freight Co. v. Travelers Insurance Co.* (1963), 40 N.J. 511, 525, 193 A.2d 217, 224-25, citing and quoting from *Kievit v. Loyal Protective Life Insurance Co.* (1961), 34 N.J. 475, 482, 170 A.2d 22, 26.

In the past 20 years, some 17 States have adopted the doctrine in one form or another. However, we note that in nearly every case it has been used as a rule of construction. For example, the Supreme Court of North Dakota stated:

> "The invocation of the Doctrine of Reasonable Expectations may not always be appropriate but is when, as here, ambiguity is created by confusingly dissimilar exclusionary language buried in the bodies of two policies ostensibly providing comprehensive farm liability coverage. What the one hand bestows, the other imperceptibly takes away. This kind of leger-demain by draftsmanship, the lack of notice to the buyer of the policy exclusions, the inconspicuous placement of the exclusionary clauses in the contracts, their obscure relationship to each other, and the reasonable belief of the insured that he was securing general liability coverage for his 'normal farming opera-

tions' all foster coverage expectations which must be fulfilled in this instance." *Mills v. Agrichemical Aviation, Inc.* (N.D. 1977), 250 N.W.2d 663, 673.

It is noteworthy that in *Mills* only one justice joined in the principal opinion and that three concurred specially. We are not disposed to engraft such a novel doctrine upon the law of Illinois.

■ First of all, it has been held that the "care, custody and control" clauses are not ambiguous. (*Maryland Casualty Co. v. Holmsgaard* (1956), 10 Ill. App. 2d 1, 133 N.E.2d 910.) Therefore, the reason for the rule fails. Secondly, apart from the question of ambiguity, if such a principle is to become the law of Illinois generally, it is not the province of this court so to say. We have found no Illinois case in which the doctrine of reasonable expectations was even discussed. Furthermore, Enderlin was not a party to Adkisson's insurance contract. We are unable to see how Enderlin's reasonable expectations were any part of it.

■ Enderlin has argued that the concept of adhesion contracts in relation to reasonable expectations. We are aware of only one case in which a court has ignored the explicit language of a contract using a concept of adhesion. In *Star Finance Corp. v. McGee* (1975), 27 Ill. App. 3d 421, 326 N.E.2d 518, a debtor sought vacation of a judgment by confession. The debtor maintained that she was unaware of the "confession clause." The trial court denied the motion to vacate, but the appellate court reversed, holding that whether a contract is one of adhesion is a question of fact and the record would not justify a conclusion on this point either way. The court further stated that the contract was on a standardized form, prepared by the creditor and that the debtor's affidavit that she did not understand the "confession clause" was uncontradicted. "If that be so, she could not intelligently and knowingly waive her right to pretrial notice." 27 Ill. App. 3d 421, 426, 326 N.E.2d 518, 522.

Illinois courts have spoken of adhesion contracts in other situations. (See *American Food Management, Inc. v. Henson* (1982), 105 Ill. App. 3d 141, 434 N.E.2d 59; *Eisele v. Ayers* (1978), 63 Ill. App. 3d 1039, 381 N.E.2d 21.) However, we know of no decision holding an insurance contract to be one of adhesion. In fact, quite the opposite is true. Our courts have consistently held that insurance contracts are to be interpreted as any other ordinary one. *Seeburg Corp. v. United Founders Life Insurance Co.* (1980), 82 Ill. App. 3d 1034, 403 N.E.2d 503; *Rivota v. Kaplan* (1977), 49 Ill. App. 3d 910, 364 N.E.2d 337; *Bituminous Casualty Corp. v. North River Insurance Co.* (1977), 46 Ill. App. 3d 654, 361 N.E.2d 60.

For all the foregoing reasons, the judgment of the circuit court of Warren County is affirmed.

Affirmed.

GREEN and MILLER, JJ., concur.