HANOVER INSURANCE COMPANY, Plaintiff-Appellant, v. RUSSELL SHOWALTER *et al.*, Defendants-Appellees.

First District (Sixth Division)   No. 1—89—1740

Opinion filed September 28, 1990.

O'Connor, Schiff & Myers, of Chicago (Loretta M. Griffin, of counsel), for appellant.

Mary Francis Hill, of Palos Heights, for appellee Russell Showalter.

Berman, Trachtman & Malek, P.C., of Chicago (Michael H. Berman, of counsel), for appellee Steve Trexler.

JUSTICE EGAN delivered the opinion of the court:

The defendant, Russell Showalter (Showalter), was an insured un-

der a homeowner's personal liability policy issued by the plaintiff, Hanover Insurance Company (Hanover). Steve Trexler (Trexler) filed a negligence complaint against Showalter seeking compensation for damages. The complaint alleged that Showalter, a member of the defendant Parachute Center, Inc., had organized a parachute jump, that Trexler jumped from an airplane and that another jumper collided with Trexler causing Trexler's main parachute to collapse and preventing Trexler's emergency parachute from opening. The specific acts of negligence charged against Showalter were that he included Trexler in a jump of five persons when Showalter knew or should have known that Trexler was not qualified to participate in such a jump, that Showalter failed to inform all the members of the jump as to what elevation the parachutes would be opened and that he failed to be sure that Trexler was provided with a cut-away knife. Hanover defended Showalter under a reservation of rights and also filed a complaint seeking a declaration that its policy excluded coverage for Trexler's alleged injuries based on a policy exclusion of coverage for injuries arising out of "the ownership, maintenance, use, loading or unloading of an aircraft." The judge denied Hanover's motion for summary judgment and granted the defendants' motion for summary judgment, holding that either the term "aircraft" was ambiguous or that a parachute was not an "aircraft" within the meaning of the policy exclusion. Both sides in their briefs agree that no questions of fact exist and that the case should be decided on summary judgment one way or the other. The suggestion made by Hanover in oral argument in this court that, alternatively, a fact question might exist as to the degree of control a jumper has over a parachute and that the case could be remanded was not argued in the trial court or in the briefs in this court. Consequently, it will not be considered.

This case is one of first impression in Illinois, but a number of cases from other jurisdictions have dealt with the same or similar questions. Before we address them, it is appropriate to set forth general principles of law applicable to the construction of insurance policy exclusions. Those rules have been set out in *Economy Fire & Casualty Co. v. Kubik* (1986), 142 Ill. App. 3d 906, 909, 492 N.E.2d 504, 506:

> "The rules governing the interpretation of insurance policies require the court to effectuate the intent of the parties. [Citation.] Where the terms of a policy are clear and unambiguous, its plain meaning will be given effect. [Citation.] Where, however, a provision in an insurance policy is subject to more than one reasonable interpretation, it is ambiguous and should be

construed against the insurer and in favor of the insured. [Citation.] Ambiguous provisions in which an insurer seeks to limit its liability are construed most strongly against the insurer with the insurer having the obligation to show that the claim falls clearly within the exclusion. [Citation.] Thus, exclusionary provisions are applied only where the terms are clear, definite, and explicit. [Citation.]"

■■ The parties dispute whether the contract is ambiguous; Showalter argues that the meaning of "aircraft" as used in the policy is uncertain and that, therefore, the contract is ambiguous. Trexler argues that there is no ambiguity and that a parachute clearly is not an aircraft. Hanover argues that, just as clearly, a parachute is an aircraft. For reasons to be discussed later, we agree with Trexler and Hanover that there is no ambiguity. Contract terms are not ambiguous simply because the parties do not agree on their meaning. (*J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.* (1990), 194 Ill. App. 3d 744, 551 N.E.2d 340.) It is our task, therefore, as a reviewing court to construe or interpret the contract of insurance as a question of law unrestrained by the trial court's judgment. (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 405 N.E.2d 1051.) We conclude that we are able to determine the meaning of the language of the contract without resort to any rules of construction.

Our discussion appropriately begins with the language of the exclusion itself. Although some confusion existed in the trial court over the applicable provision of the policy, the parties now agree that the following language is at issue:

"Coverage E—Personal Liability and Coverage F—Medical Payments to other[s] [do] not apply to personal injury or property damage:

\* \* \*

g) arising out of:

(1) the ownership, maintenance, use, loading or unloading of an aircraft[.] \*\*\* An aircraft means any contrivance used or designed for flight except model aircraft of the hobby variety not used or designed to carry people or cargo."

"Flight" is not defined in the policy. Consequently, we must look to the accepted definition of the word. "Flight" is defined as follows:

"1(a): the act or mode of passing through the air by the use of wings \*\*\* 2(a): a passing or mode of passing through the air analogous (as in duration or distance) to that of a winged creature: a journey or voyage through the air." (Webster's Third New International Dictionary 870 (1981).)

A "parachute" is defined as follows:

> "[A] folding umbrella-shaped device usu[ally] made of light fabric for retarding the speed of a body attached to it by offering resistance to the air and used esp[ecially] for making a safe descent from an airplane, dropping equipment or supplies from an airplane, or slowing down an airplane upon landing." (Webster's Third New International Dictionary 1635 (1981).)

The definition of "aircraft" is as follows:

> "[A] weight-carrying machine or structure for flight in *or navigation of the air* that is designed to be supported by the air either by the buoyancy of the structure or by the dynamic action of the air against its surfaces—used of airplanes, balloons, helicopters, kites, kite balloons, orthopters, and gliders but chiefly of airplanes or aerostats." (Emphasis added.) Webster's Third New International Dictionary 46 (1981).

■ The policy's definition of an aircraft as any contrivance used or designed for flight—a more narrow meaning than the dictionary definition of a device for "flight in *or navigation of* the air"—requires the court to look to the ordinary meaning of "flight." The dictionary definition of flight—the act or mode of passing through the air by the use of wings or in a manner analogous (as in duration or distance) to that of a winged creature, or a journey or voyage through the air—does not, in our judgment, encompass the nature of a descent by parachute. A conventional parachute is a device used to retard speed in order to allow an object to make a safe descent from an airplane or some other weight-carrying machine in the air. Such a descent is not made by the use of wings or in a manner analogous in duration, distance or otherwise to that of a winged creature. We agree with the trial court's interpretation that a conventional parachute, as was used in this case, is not an "aircraft" as that term is used within the exclusion provision of the policy. As we will discuss later, other courts have held that a "parachute" is not an "aircraft."

Hanover has cited a number of cases which can be distinguished as factually inapposite. In *Totten v. New York Life Insurance Co.* (1985), 298 Or. 765, 696 P.2d 1082, *Fireman's Fund American Life Insurance Co. v. Long* (1978), 148 Ga. App. 216, 251 S.E.2d 133, and *Fielder v. Farmers New World Life Insurance Co.* (C.D. Cal. 1977), 435 F. Supp. 912, the courts held that an action for damages under a life insurance policy was barred where the death of the insured occurred while using a hang-glider. In *Totten* and *Fielder* the courts held that a hang-glider was an "aircraft." "Aircraft" was not defined in the policies involved. In *Fireman's Fund* the policy provision ex-

cluded coverage for injuries resulting from "[t]ravel or flight in any vehicle or device for aerial navigation." (148 Ga. App. at 217.) The court held that a glider constituted a "vehicle or device for aerial navigation" within the terms of the exclusion. (148 Ga. App. at 217.) *Fireman's Fund* cited and relied on *Fielder*. We note that gliders are included in the Webster's dictionary definition of "aircraft."

In *Deschler v. Fireman's Fund American Life Insurance Co.* (Utah 1983), 663 P.2d 97, the Utah Supreme Court held in a three-to-two decision that a water-ski kite was a "vehicle or device for aerial navigation" within the meaning of the policy exclusionary clause. We note again that "kites" are included in the Webster definition of "aircraft." Since kites and gliders are included in the dictionary definition of "aircraft," those cases do not assist Hanover's position here.

Hanover has also cited three cases which, like *Fireman's Fund* and *Deschler*, involved a policy exclusion for "injuries sustained through the use of any vehicle or device for aerial navigation." (*Edison v. Reliable Life Insurance Co.* (9th Cir. (1981), 664 F.2d 1130; *Cabell v. World Service Life Insurance Co.* (Tex. App. 1980), 599 S.W.2d 652; *Stajnrajh v. Continental Casualty Co.* (Ct. Common Pleas 1965), 41 Pa. D. & C. 411.) Those three cases involved injuries incurred while using some kind of parachute.

In *Cabell*, relied on heavily by Hanover, the court first described the device used:

"The chute [the deceased] used, unlike the conventional parachute used primarily for emergency exits from aircraft, was a square, wing-type device known as a para-plane. Compared to a round parachute, the para-plane was highly maneuverable and was specifically designed for sport parachuting. *** Because it was an airfoil, it moved forward through the air instead of only downward, at a speed of approximately 20 miles per hour, and used the aerodynamic principles of the airfoil to generate lift and retard its downward motion. The jumper could control its direction by means of steering toggles which could also be used to brake the chute and retard its forward speed. *** In many respects the para-plane was similar to a glider, and one witness testified that while riding a para-plane, one is not simply drifting or descending through the air but is actually *flying* in the direction he chooses." (Emphasis added.) (*Cabell*, 599 S.W.2d at 652.)

*Edison*, which relied on *Cabell*, also involved a sport parachute. In *Stajnrajh*, a trial court opinion, the judge held that the parachute involved in the case was a device "for aerial navigation." The opinion

does not reflect what type of parachute was involved.

As can be seen, in all three cases the policy provision depended on the interpretation of the term "aerial navigation." We think it significant that Hanover's policy previously read "flight or navigation," but the later policy which was issued to Showalter deleted the phrase "or navigation." We also point out that the parachute involved in this case was not a sport parachute as was used in *Cabell* and *Edison*. We judge that *Cabell, Edison* and *Stajnrajh* are distinguishable and do not support Hanover's position here.

In the last case cited by Hanover, *Smith v. Mutual Benefit Health & Accident Association* (1953), 175 Kan. 68, 258 P.2d 993, the policy excluded "injuries received as a result of or while participating in aeronautics or air travel except [as a fare-paying passenger]." (175 Kan. at 70, 258 P.2d at 995.) The court found the policy language unambiguous, concluding that "participating in aeronautics" meant "to share in sailing or floating in the air." The court held that coverage was excluded because the plaintiff was engaged in an aeronautical maneuver when he voluntarily parachuted from an airplane. (175 Kan. at 73, 258 P.2d at 996-97.) The language at issue in *Smith*—"participating in aeronautics or air travel"—is also broader and more inclusive than that used by Hanover in the policy here—"use of *** any contrivance used or designed for flight." A parachute user can perform an aeronautical maneuver, that is, descend from an airplane, but cannot fly.

The defendants refer us to two cases: *Clark v. Lone Star Life Insurance Co.* (Tex. App. 1961), 347 S.W.2d 290, and *Childress v. Continental Casualty Co.* (E.D. La. 1978), 461 F. Supp. 704, *aff'd per curiam* (5th Cir. 1979), 587 F.2d 809. In *Clark*, the policy limited damages for injuries incurred during "travel or flight in or on any species of an aircraft." (*Clark*, 347 S.W.2d at 291.) The insured came to his death while parachute jumping. The policy did not define "aircraft." Relying on dictionary definitions of "parachute," the court held that a parachute was not an aircraft under the policy. 347 S.W.2d at 293.

In *Childress*, the policy excluded injuries sustained while "riding *** in any vehicle or device for aerial navigation." (*Childress*, 461 F. Supp. at 705.) The insured was using a type of parachute which could be used to control descent with a great deal of precision. The court, citing *Clark* and relying on the Webster definition of parachute (the same definition which we have used), held that a parachute was not a device for aerial navigation. The court refused to follow *Stajnrajh* and distinguished *Fielder*, which involved a hang-glider, on its facts.

We believe that *Clark* is factually more closely applicable here

than any other case since it involved "flight" in or on an "aircraft." Hanover deprecates the applicability of *Childress*, pointing out that the Ninth Circuit Court of Appeals in *Edison* expressly refused to follow the Fifth Circuit's holding in *Childress*. But no such rejection of *Clark* has been called to our attention. Hanover maintains that the "viability of [*Clark*] is in question given the more recent opinion of the Texas courts in [*Cabell*]." We do not read *Cabell* to be a repudiation of *Clark*. *Cabell*, which was decided by one district of the Texas Court of Civil Appeals, made reference to *Clark*, decided by another district of the Texas Court of Civil Appeals, without disapproval. (*Cabell*, 599 S.W.2d at 654 n.2.) Indeed, in *Cabell*, the reviewing court affirmed the trial court which had held, like *Clark*, that a parachute was not an aircraft.

In construing the language of the exclusionary provision, we judge that a parachute is not an "aircraft," that is, a "contrivance used or designed for flight" and that the trial judge properly entered summary judgment in favor of the defendants.

■■ Hanover also argues that the exclusion is applicable because the use of the airplane for ascent necessarily means that the accident occurred through the use or unloading of the aircraft. That argument was never made in the trial court, as the defendant Trexler has pointed out in his brief. Hanover has made no response to Trexler's argument. In all memoranda and oral arguments in the trial court, the only issue raised was whether or not the parachute could be considered an aircraft within the meaning of the policy exclusion. A theory upon which a case is tried cannot be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on appeal. (*Cosentino v. Price* (1985), 136 Ill. App. 3d 490, 483 N.E.2d 297.) Thus, Hanover has waived its argument that the exclusion's requirements were satisfied by Trexler's use of an airplane to ascend to a height sufficient for parachuting and by his voluntarily jumping (that is, unloading) from the airplane.

For all these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and McNAMARA, J., concur.