**HERMITAGE INSURANCE COMPANY, Plaintiff,**

v.

**ACTION MARINE, INC., et al., Defendants.**

**No. 92 C 2476.**

United States District Court, N.D. Illinois, E.D.

Feb. 22, 1993.

James Kirk Perrin, Stacy Shawn Dick, Haskell & Perrin, Chicago, IL, for Hermitage Ins. Co.

Peter W. Andjelkovich, Bradley J. Wartman, Chicago, IL, for Action Marine Inc.

Ernest T. Rossiello, Chicago, IL, for Riccardo Benvenuto.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

Plaintiff Hermitage Insurance Company ("Hermitage") brought this declaratory judgment action against defendants Action Marine, Inc. ("Action Marine") and Riccardo Benvenuto ("Benvenuto") to determine the degree to which Hermitage was obliged to indemnify Action Marine under an insurance policy that Hermitage sold to Action Marine. This dispute centers around the validity of a Special Multi–Peril Liability Policy issued by Hermitage (the "Policy") to Action. Hermitage contends that Exclusion (k)(3) ("Exclusion") within the Policy applies to the present case and therefore bars Action from recovering damages to the mast that was damaged at Action's marina. Action alleges that the Exclusion does not apply to the facts of this case, that it is ambiguous, and thus void. Action further counterclaims that Hermitage exercised bad faith and vexatious conduct and sought relief under Ill.Rev.Stat. ch. 73, para. 767 (1991) (now codified at 215 ILCS 5/155 (West 1992)).

Hermitage filed a motion to dismiss Count II of Action Marine's counterclaim. Hermitage alleged that Action Marine failed to state any facts that would support a claim for vexatious conduct. Hermitage and Action Marine then filed cross-motions for summary judgment on their respective claims. For the following reasons, we grant Hermitage's motion for summary judgment and its motion to dismiss Count II of Action Marine's counterclaim, and we deny Action Marine's motion for summary judgment with respect to both of its counts.

### SUMMARY JUDGMENT AND LOCAL RULE 12

Before we address the background and issues of this case, we must first address a threshold issue of procedure.

When analyzing a motion for summary judgment, we engage in a two-step process. We first decide whether there exists a genuine issue of material fact. If we conclude that no material issue of fact exists, than we

must decide whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When analyzing the facts presented, a court must view the record and all inferences to be drawn from it in a light most favorable to the non-movant. *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991). When presented with cross-motions for summary judgment, we have a more difficult task because we must consider two separate factual scenarios. As applied to this case, we must in the first instance construe the facts in the light most favorable to Hermitage; in the second we must construe the facts in a light most favorable to Action Marine. *Phaup v. Pepsi–Cola General Bottlers, Inc.,* 761 F.Supp. 555, 557 n. 5 (N.D.Ill. 1991).

In this district, Local Rules 12(M) and 12(N) require the parties moving for and opposing summary judgment under Rule 56 of the Federal Rules of Civil Procedure to state the material facts of the case. Local Rule 12(M) requires the moving party to provide a supporting memorandum of law, including a statement of material facts as to which that party contends there is no genuine issue and which entitle that party to summary judgment as a matter of law. The movant is required to set each fact in a short numbered paragraph and include a specific reference to the record to support that fact.

Local Rule 12(N) requires the party opposing summary judgment to submit a supporting memorandum of law, including a supporting statement responding to each numbered paragraph in the movant's statement of material facts. The party opposing summary judgment must state any disagreement to the material facts set forth by the moving party. If the party opposing summary judgment fails to state any disagreement with the facts set forth in the movant's statement, those facts are deemed admitted. These requirements have been strictly enforced in this district. *See Pasant v. Jackson Nat'l Life Ins. Co.,* 768 F.Supp. 661, 663 (N.D.Ill. 1991); *Davis v. Frapolly,* 756 F.Supp. 1065, 1069–70 (N.D.Ill.1991), and in the Court of Appeals. *See Brown v. United States,* 976 F.2d 1104, 1108 (7th Cir.1992); *Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519 (7th Cir. 1992); *Capitol Converting Equip., Inc. v. LEP Transp., Inc.,* 965 F.2d 391, 394–95 (7th Cir.1992); *Bell, Boyd and Lloyd v. Tapy,* 896 F.2d 1101, 1103 (7th Cir.1990).

In response to Action Marine's motion, memorandum and 12(M) statement, Hermitage failed to file a 12(N) statement contesting the material facts alleged by Action Marine. Hermitage's response to Action Marine's motion consisted of a memorandum alleging facts supported by the record. Hermitage failed to contest any of the individual paragraphs in which Action Marine set forth material facts. Thus, under strict application of Local Rule 12(N), Hermitage has admitted the material facts alleged by Action Marine for the purposes of Action Marine's motion for summary judgment. However, the material facts set forth in Action Marine's 12(M) statement do not entitle Action Marine to summary judgment as a matter of law.

Hermitage's motion for summary judgment includes a statement of material facts that, with minor exception,[1] complies with Local Rule 12(M). Action Marine responded with a 12(N) statement contesting certain facts set forth in Hermitage's motion and agreeing to others. The following statement of facts is drawn from a careful consideration of Hermitage's motion for summary judgment, Action Marine's 12(N) statement, and the record of this case.

## FACTUAL BACKGROUND

Hermitage sold the Policy to Action Marine, which provides servicing and storage for boats. Generally, the Policy provided bodily injury and property damage protection for incidents arising from operations necessary to Action Marine's business. The Policy was subject to expressed conditions and Exclusions, and it was in effect for a period of one year beginning October 17, 1990.

On October 1, 1991, Riccardo Benvenuto and two associates brought Benvenuto's

---

1. Although several of the material facts set forth in Hermitage's motion are not supported by specific references to the record, Action Marine stated that it did not contest these facts in its 12(N) statement.

yacht to Action Marine for removal of the boat's mast. Benvenuto and his associates prepared the mast for removal by unfastening riggings and removing the masthead instruments. After the mast was prepared for removal, Benvenuto's associate, Anthony Salazar ("Salazar"), attached a manila line provided by Action Marine to the mast and then to Action Marine's crane. Action Marine employees then finished securing the line to the bottom of the mast. On a signal from a fellow Action Marine employee, crane operator Gerald Auriema ("Auriema") raised the mast approximately one and one half feet so that Benvenuto could disconnect the remaining electrical wires running between the mast to the boat. Benvenuto and his associates then signaled Action Marine's crane operator that the disconnection was completed and the mast was clear for removal.

As the crane lifted the mast, Benvenuto and his associates assisted Action Marine employees by "walking" the butt of the mast toward the dock so that the mast could clear the boat's rail. Once the mast was clear of the boat, Auriema continued to raise the mast on the signal given by Jesus Bucera ("Ramone"), an Action Marine employee. At this point, the manila line broke, and the mast fell, causing damage to both boat and mast.

Benvenuto then filed suit in this court, alleging negligence on the part of Action Marine and its employees and seeking compensation for damage to both boat and mast. Pursuant to the Policy, Hermitage provided a defense to Action Marine in the underlying action under a reservation of rights to contest the scope of the Policy's coverage. Hermitage then informed Action Marine that it would not indemnify it for damage to the mast itself.

Hermitage based this denial of coverage upon Exclusion (k)(3) within the Policy. The Exclusion reads, in relevant part:

This insurance does not apply:

\* \* \* \* \* \*

(k) to property damage to

\* \* \* \* \* \*

(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control.

Hermitage Insurance Policy No. HMP 102638, Sec. II, p. 1. In denying coverage, Hermitage contended that at the time the mast fell from the crane, it was exclusively in the care, custody, or control of the insured, Action Marine, and therefore, any damage to the mast was excluded from coverage.

Hermitage then moved for summary judgment arguing that Exclusion (k)(3) applies to the damage to the mast and that Hermitage has no duty to indemnify Action Marine for the mast damage. Action Marine moved for summary judgment stating that the Exclusion does not apply and that Hermitage does have a duty to indemnify Action Marine for damage to the mast.

Action Marine further alleged bad faith and vexatious conduct on the part of Hermitage in that Hermitage allegedly wrongfully denied coverage to its insured. Action Marine claimed a right to attorney fees, costs, and other appropriate relief pursuant to Ill. Rev.State. ch. 73, para. 767 (1991). On June 18, 1991, Hermitage moved to dismiss this count stating that Action Marine failed to allege any facts that would support a claim for bad faith or vexatious conduct on the part of an insurer.

On September 25, 1992, Hermitage and Action filed cross-motions for summary judgment on each of their respective claims for declaratory judgment. These cross-motions require us to consider the meaning and validity of Exclusion (k)(3) as well as the issue of whether Action Marine had the care, custody, or control of the mast at the time of the incident.

## DISCUSSION

*A. Validity of the Exclusion*

 Under Illinois law,[2] insurance contracts are to be interpreted by the sense and meaning of the terms employed, and, if these terms are free from ambiguity, they are to

---

**2.** The parties agree that Illinois law applies to the validity and application of the insurance contract in this case.

be understood in their plain, ordinary, and proper sense. *Ansvar Am. Ins. Co. v. Hallberg*, 209 Ill.App.3d 206, 154 Ill.Dec. 77, 79, 568 N.E.2d 77, 79 (1991). With regard to policy exclusions, courts should not interject terms into exclusions, *Mid–Central Mut. Casualty Co. v. Spanjer*, 101 Ill.App.2d 468, 243 N.E.2d 452, 455 (1968), and clearly stated exclusions are to be given their full meaning and effect. *La Salle Nat'l Bank v. American Ins. Co.*, 14 Ill.App.3d 1027, 303 N.E.2d 770, 773 (1973). However, policy exclusions will not be given effect if they would lead to an illogical or inconsistent result. *Hanover Ins. Co. v. Showalter*, 204 Ill.App.3d 263, 149 Ill. Dec. 534, 535, 561 N.E.2d 1230, 1231 (1990).

■ In its response to Hermitage's motion for summary judgment, Action Marine contended that Exclusion (k)(3), if given effect, would "effectively defeat the essential purpose of the Policy." While the Policy does not state its essential purpose, the Policy explicitly covers:

> [A]ll sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage *to which this insurance applies* ...

Hermitage Insurance Policy No. HMP 102638, Sec. II, p. 1 (emphasis added). Exclusion (k)(3) follows shortly thereafter, stating:

> This insurance *does not apply*
>
> \* \* \* \* \* \*
>
> (k) to property damage to
>
> \* \* \* \* \* \*
>
> (3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control.

Hermitage Insurance Policy No. HMP 102638, Sec. II, p. 1 (emphasis added).

■ These words are the only evidence of the parties' intent within the insurance Policy itself. While Action Marine may have believed that the Policy provided coverage broader in scope than these words indicate, unilateral intent or mistake on the part of the insured does not permit an insurance contract to be construed in a manner other than what its plain and unambiguous terms dictate. *Finer Amusements, Inc. v. Citizens Ins. Co.*, 327 F.2d 773 (7th Cir.1964) (refusing to reform insurance contract to provide the broader coverage that the insured thought it had purchased).

■ Exclusion (k)(3) is not "so exhaustive that the Policy fails in its essential purpose." The fact that Hermitage concedes that the Policy covers damage to the boat proves Action Marine's assertion inaccurate. An insurance policy is not ambiguous or void in whole or in part merely because it initially states broad coverage and then excludes coverage for specific hazards. *G.E. Mathis Co. v. Centennial Ins. Co.*, 80 Ill.App.3d 610, 36 Ill.Dec. 201, 400 N.E.2d 621 (1980). Broader coverage may have been available to Action Marine for an additional premium, and the clause immediately following Exclusion (K)(3) suggests as much: "but parts (2) and (3) of this Exclusion do not apply with respect to liability under a written sidetrack agreement." However, the record does not show that Action Marine sought to purchase additional coverage under such a sidetrack agreement.

Illinois courts have found exclusions very similar to that in the present Policy to be unambiguous and have given these clauses effect. *See Insurance Company of North America v. Adkisson*, 121 Ill.App.3d 224, 76 Ill.Dec. 673, 674, 459 N.E.2d 310, 311 (1984). In *Adkisson*, the Illinois Appellate Court considered whether the plaintiff insurance company had properly denied coverage to its insured under a general farm liability policy. *Id.* The insured in that case was the bailor of a stud bull that fell and died while the insured was transporting him back to his farm. *Id.* The insurer in *Adkisson* denied coverage based upon a clause that excluded coverage for "Property damage to \* \* \* property ... in the care, custody, or control of the insured or as to which the insured is for any purpose exercising physical control." *Id.*

The *Adkisson* court noted that such clauses are common to insurance policies and that Illinois courts employ a two-part test to determine whether liability is excluded under such a clause. *Adkisson*, 76 Ill.Dec. at 674, 459 N.E.2d at 311. First, the property must be within the possessory control of the insured at the time of the loss. *Id.* Second, the property must be a necessary element of

the work performed. *Id.* Finding both conditions satisfied, the *Adkisson* court affirmed the trial court's opinion denying coverage. *Id.*

Exclusion (k)(3) is therefore valid as a matter of law, and, subject to the two-part test articulated in *Adkisson,* should be given force and effect in the present case.

### B. Application of Exclusion (k)(3) in the Present Case

Applying the first part of the test stated in *Adkisson,* we first note that while the control exercised by the insured must be exclusive, it need not be continuous. *See Caisson Corp. v. Home Indemnity Corp.,* 151 Ill.App.3d 130, 104 Ill.Dec. 508, 510, 502 N.E.2d 1168, 1170 (1986). In *Caisson,* the Illinois Appellate Court considered whether an exclusion identical to the one in the present case would bar coverage for damage to a truck bailed to the insured. *Id.* 104 Ill.Dec. at 509, 502 N.E.2d at 1169. In spite of the fact that the truck was being operated by its owners when it was damaged and that the owners drove the truck to and from its storage facility each day, the *Caisson* court determined that the insured did have possession of the truck at the time of the mishap because the insured was directing and controlling its operation. *Id.* 104 Ill.Dec. at 510, 502 N.E.2d at 1170. The court further noted that intimate and continuous handling are not required to establish possessory control in Illinois. *Id.* The relevant inquiry is whether the insured had control at the time of the mishap. *Id.*

The facts of the present case show that Action Marine *did* have exclusive possession and control of the mast at the time the manilla line broke and the mast fell. The parties went to considerable effort to detail the events leading up to the mishap by showing who gave what signals and who supported the butt of the mast before the crane raised it. However, the material facts are quite clear. Although defendant Benvenuto and his associates participated in preparing the mast for removal, even up to the point of "walking" the butt of the mast to the side of the boat, Action Marine employees Auriema and Ramone were exercising control over the mast when the line broke. By raising the mast toward Action Marine's dock, Auriema was for all intents and purposes accepting possession and control of the mast. When deposed in the underlying action, Auriema stated that he was receiving signals from Ramone at the time the line broke. In spite of the fact that Action Marine had only recently come into exclusive possession of the mast, Action Marine did have possession to the same degree as did the defendant in *Caisson.* Therefore, Action Marine's actions satisfy the first part of the test stated in *Adkisson.*

Considering the second step of the *Adkisson* test, it is clear that the mast was a necessary element of the services performed by Action Marine. In their cross-motions for summary judgment, both parties acknowledge that Action Marine provides servicing and storage for boats. Possession of the mast would, of course, be necessary to Action Marine's business.

We find *Monari v. Surfside Boat Club, Inc.,* 469 F.2d 9 (2nd Cir.1972), cited by plaintiff for support, very persuasive. In *Monari,* the Second Circuit considered the application of an identically worded exclusion to facts quite similar to those presented here. *Id.* Applying New York law, the *Monari* court determined that the insured in that case did have possession and gave effect to the exclusion. *Id.*

Action Marine attempts to distinguish *Monari* because it applies New York law and because the policy therein was an "Owners', Landlords', and Tenants' " policy, designed to protect the insured for defective conditions in its real property. However, these distinctions are meaningless in light of *Stewart Warner Corp. v. Burns Int'l Sec. Services, Inc.,* 527 F.2d 1025 (7th Cir.1975). In *Stewart Warner,* the Seventh Circuit, applying Illinois law, utilized *Monari* as persuasive authority to interpret an exclusion very similar to the one at issue here. *Id.* at 1030. Furthermore, the fact that *Monari* dealt with a policy to protect against defective conditions in real property and the policy in *Stewart Warner* was designed to protect a security service from liabilities arising from its operations did not dissuade the Seventh Circuit from finding *Monari* persuasive. *Id.*

Since the facts of the present case satisfy the two-part test discussed in *Adkisson,* Ex-

clusion (k)(3) is to be given effect so as to relieve Hermitage of any duty to indemnify Action Marine for damage to Benvenuto's mast.

*C. Action Marine's Claim for Bad Faith*

 Since Exclusion (k)(3) is valid and applies to the facts of the present case, Action Marine's claim for bad faith and vexatious conduct cannot be maintained. An insured cannot obtain relief under Ill.Rev.Stat. ch. 76, para. 767 when an insurer rightfully refuses to indemnify under a provision expressly excluding coverage. *McDaniel v. Glens Falls Indem. Co.,* 333 Ill.App. 596, 78 N.E.2d 111 (1948).

### CONCLUSION

For the foregoing reasons, we grant plaintiff's motion for summary judgment and plaintiff's motion to strike and dismiss Count II of Action Marine's counterclaim. Action Marine's motion for summary judgment is denied.