STANDARD MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. GENERAL CASUALTY COMPANIES *et al.*, Defendants-Appellants.

First District (1st Division)   No. 87—1229

Opinion filed June 6, 1988.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge, Charles M. Ahrendt, and Elizabeth A. Brown, of counsel), for appellants.

Van Duzer, Gershon, Jordan & Petersen, of Chicago (Lori D. Ecker, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendants, General Casualty Companies and Reliance Insurance Co., a division thereof (General Casualty), insurers of automobiles rented by Wells Rent-A-Car (Wells), appeal from summary judgment entered in favor of plaintiff, Standard Mutual Insurance Co. (SMI), insurer of Jai Kim, a Wells customer, in a declaratory judgment action which sought an interpretation of two automobile insurance policies. In granting summary judgment in favor of SMI, the trial court found that General Casualty had a duty to defend Jai Kim in a personal injury lawsuit arising out of an automobile accident which occurred while Kim was driving an automobile he had rented from Wells. On appeal, General Casualty contends that the trial court erred in failing to analyze Wells' rental agreement in conjunction with General Casualty's policy, which together indicated that Kim had violated the terms of the rental agreement, which rendered General Casualty's policy null and void as to Kim. For the following reasons, we affirm the judgment of the trial court.

The record indicates that on August 9, 1983, Jai Kim rented a station wagon from Wells at its location in Skokie, Illinois. At the time, the automobiles rented by Wells were insured under a business auto insurance policy issued by General Casualty (the Policy), and Kim was personally insured under an automobile liability insurance policy issued by SMI. When Kim rented the car, he entered into a rental agreement with Wells and paid an additional sum for liability and collision coverage to be provided by Wells pursuant to the Policy.

On August 10, 1983, Kim was involved in a motor vehicle accident with a motorcycle in Niagara Falls, Ontario, Canada. When Kim returned the station wagon to Wells, he reported the accident. Subsequently, General Casualty investigated the accident and settled the property damage claim of the motorcyclist under the liability insurance portion of the Policy. However, when the motorcyclist and his passenger filed a personal injury claim against Kim, Wells and Gen-

eral Casualty denied coverage and refused to defend Kim on the ground that Kim had breached the terms of the rental agreement by taking the automobile outside Illinois without Wells' written permission.

As a result, SMI undertook Kim's defense and also filed a complaint for declaratory judgment to determine the rights and responsibilities of the parties under the provisions of the respective insurance policies. SMI claimed that pursuant to express provisions in its policy issued to Kim, its responsibility was to provide only excess insurance over any other valid and collectible insurance, and General Casualty was the primary insurer. General Casualty, on the other hand, contended that its obligation to provide liability coverage under the Policy became null and void when Kim violated the rental agreement by driving the automobile out of State without having first obtained Wells' written permission. Thus, according to General Casualty, SMI was the sole insurer.

In granting partial summary judgment to SMI as to General Casualty's duty to defend Kim, the trial court made the following findings: (1) Kim's use of the rental car in Canada was a permitted use within the meaning of the Policy, as a matter of law; (2) SMI's policy provided excess insurance; and (3) until the underlying case was decided, the court would not make a disposition as to duty to indemnify. On appeal, General Casualty concedes that Kim was a permitted user, but claims that once he breached the rental agreement by taking the car out of State without written permission, General Casualty's duty to provide coverage under the Policy ceased.

The relevant SMI policy provision states, in pertinent part:

"Other insurance: *** the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

The relevant provisions of Wells' rental agreement state, in pertinent part:

"5. Renter agrees not to use or operate said vehicle ***

(e) Outside of the State in which the vehicle was rented without the written consent of a WELLS RENT A CAR representative;

* * *

7. WELLS RENT A CAR agrees to insure the Renter under a standard automobile public liability and property damage policy, subject to the terms, conditions and restrictions contained in the policy, which by reference hereto are incorpo-

rated herein and made a part hereof, and the Renter agrees to be bound by such terms, conditions and restrictions."

General Casualty's policy, incorporated into the rental agreement, includes the following relevant provisions:

"PART III—WHERE AND WHEN THIS POLICY COVERS

We cover accidents or losses which occur during the policy period:

A. In the United States of America, its territories or possessions, Puerto Rico or Canada; or

B. While the covered auto is being transported between any of these places."

"AUTO RENTAL ENDORSEMENT

4. Exclusions: *** This policy does not apply:

(a) to the rentee while such auto is used or operated in violation of the terms and conditions of the rental agreement under which such auto is rented."

The general question raised on appeal is whether the trial court erred in granting summary judgment in favor of SMI as to General Casualty's duty to defend Kim in the personal injury action. General Casualty contends that the personal injury claim is clearly not covered by the Policy because Kim had breached the terms of the rental agreement by not receiving written permission from Wells to take the car out of Illinois, which acted to nullify the Policy. General Casualty emphasizes that the rental agreement and the Policy must be read together to determine the conditions of coverage and the effect a breach of the agreement has on the Policy.

However, when the rental agreement and the Policy are read together, several problems arise which, in our view, undermine General Casualty's position and render the Policy unenforceable. Most importantly, the conditions precedent to coverage in the rental agreement drastically reduce the amount of coverage provided to the renter under the Policy. This not only contravenes public policy, it also directly contradicts Kim's reasonable expectations that when he paid Wells for liability coverage, he would be relieved from liability in the event of a collision.

This court addressed a situation analogous to the case at bar in *Fidelity General Insurance Co. v. Nelsen Steel & Wire Co.* (1971), 132 Ill. App. 2d 635, 270 N.E.2d 616. Although *Fidelity* concerned the enforceability of an insurance reimbursement provision, we find the *Fidelity* court's analysis applicable to the present situation. In *Fidelity,* Pearson's Car Service rented a truck, insured by Fidelity General Insurance Company, to Nelsen Steel & Wire Company. While

Robert Duffy, a Nelsen employee, was driving the truck, he was involved in a collision with an automobile owned by Peterson. As a result, Peterson sued Duffy to recover for personal injuries.

Pursuant to a written agreement between Fidelity and Nelsen, Fidelity paid Peterson $19,000 to settle the claim. Fidelity then sought to recover the settlement plus interest from Nelsen pursuant to a reimbursement provision in the vehicle rental agreement which provided, in part, that renter indemnify Fidelity "for any and all loss, damage, cost and expense paid or incurred by [Fidelity] *** because of injuries or damages resulting from the operation of said vehicle in violation of any of the terms and conditions appearing [in the rental agreement]." (132 Ill. App. 2d at 637.) Nelsen argued that the reimbursement provision was contrary to public policy because it required the renter to indemnify the insurer for risks required by statute.

In reaching its decision that the reimbursement provision was unenforceable, the *Fidelity* court looked to all the provisions in the rental agreement which required the renter to reimburse Fidelity and concluded that the provisions were so broad as to make Nelsen a self-insured in virtually every claim situation. The court further found that the provisions "unreasonably" and "deceptively" affected the risks that were purportedly covered by Fidelity's policy in violation of Illinois law.

In addition to addressing the public policy violations, the court focused on Nelsen's expectations when it had contracted with Pearson's for insurance coverage on the rented truck, noting that Nelsen's primary expectation was that it was insured to the limits of the law and "relieved of liability for injuries caused by the use of the vehicle." (132 Ill. App. 2d at 640.) However, in contradiction to this expectation, the rental agreement provided for reimbursement to Fidelity for amounts paid in situations which were the ones most likely to occur. The *Fidelity* court concluded that this contradiction created an ambiguity which must be construed against the insurer.

Similarly, in the present case, Kim purchased liability insurance from Wells with the understanding that by doing so he would not assume responsibility for liability and collision damage to the rented car. This understanding is clear from the language of the rental agreement which states that if a customer does not purchase insurance, he assumes full responsibility for liability and collision damage. However, in direct contradiction to Kim's expectations, the reverse side of the rental agreement sets forth in small print the following conditions precedent to coverage:

"1. \*\*\* [R]enter agrees to return said vehicle to \*\*\* WELLS RENT A CAR in the same condition in which it was received, ordinary wear and tear excepted \*\*\*
\* \* \*
5. Renter agrees not to use or operate said vehicle, or permit to be used or operated:
(a) in violation of any of the terms or conditions of this rental contract;
\* \* \*
(c) in violation of law or for any illegal purpose;
\* \* \*
(e) outside of the State in which the vehicle was rented without the written consent of a WELLS RENT A CAR representative."

Based upon the preceding conditions to coverage, if Kim had received a parking ticket, he would have breached the rental agreement and, concomitantly, voided the Policy. If he then was involved in an automobile accident, he would have had no coverage not only because he had previously violated a law by getting a parking ticket, but also because he would not be returning the car "in the same condition in which it was received." It is difficult for this court to imagine how a driver could become involved in an automobile collision and not alter the condition of the automobile he was driving. Moreover, pursuant to the rental agreement's conditions to coverage, if the renter was at fault in an accident, the Policy would be null and void because, by definition, to be at fault, the renter would have had to have violated a law. As in *Fidelity*, the rental agreement, read in conjunction with the Policy, denied coverage in those situations most likely to occur. Thus, the insurance coverage which Kim had purchased from Wells was, in effect, no coverage at all. Accordingly, because of the contradiction between Kim's expectations of coverage and the actual coverage, an ambiguity was created which, pursuant to long-standing Illinois law, must be construed against the insurer. See *Strzelczyk v. State Farm Mutual Automobile Insurance Co.* (1985), 138 Ill. App. 3d 346, 485 N.E.2d 1230.

■ In addition, the no-coverage effect of the rental agreement and the Policy, when read together, is also contrary to Illinois statutory law relating to insurance. Section 143(2) of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755(2)) states:
"If the Director [of Insurance] shall find from an examination of any \*\*\* policy form, rider, endorsement, application blank or other matter incorporated by reference in any \*\*\* policy

\*\*\* that it violates any provision of this Code, contains inconsistent, ambiguous or misleading clauses, or contains exceptions and conditions that will unreasonably or deceptively affect the risks that are purported to be assumed by the policy, he shall order the company or companies issuing such forms to discontinue the use of the same."

In the present case, Part III of Endorsement 1 of the Policy expressly provides that coverage is extended to accidents, losses in the United States, its territories or possessions, Puerto Rico and Canada. Further, the Policy clearly provides coverage for automobiles rented from Wells which are either driven or transported in the above-mentioned areas. The inconsistency arises when the rental agreement is read in conjunction with the Policy. As stated, the rental agreement contains the stipulation that written permission must be obtained from Wells before a rented car can be driven out of State, although the Policy itself provides out-of-State coverage as part of the basic terms. In our view, the rental agreement's conditions precedent to coverage unreasonably and deceptively affect the risks that are purported to be assumed by the Policy and are inconsistent and misleading. Although the Department of Insurance may have reviewed the Policy and approved it, that Policy, in effect, becomes a nullity when read in conjunction with the rental agreement. Accordingly, we find that the Policy is ambiguous, violative of statutory law, contrary to public policy and, thus, unenforceable.

■■ Moreover, Illinois law provides that if an insurance contract contains inconsistent or conflicting clauses, the clause which affords greater or more inclusive benefit for the insured will govern. (*Sentry Insurance v. Hogan* (1982), 111 Ill. App. 3d 638, 444 N.E.2d 761.) In the present case, the Policy provides the greater benefit by providing coverage for the use of the automobiles in Canada, and, therefore, prevails.

■■ Finally, SMI argues that General Casualty is estopped from denying coverage because General Casualty, pursuant to the terms of the Policy, undertook negotiations and settled with the motorcyclist as to his claim regarding property damage. However, when the motorcyclist filed a personal injury claim, General Casualty argued that the Policy was void. General Casualty contends that this issue was addressed and dismissed by the Illinois Supreme Court in *Hays v. Country Mutual Insurance Co.* (1963), 28 Ill. 2d 601, 192 N.E. 855. In *Hays,* the court focused on the meaning and application of the omnibus clause of an automobile liability insurance policy and held that the driver of the automobile was not a permissive driver within

the meaning of the policy. The plaintiff in *Hays* argued that the insurer was estopped to deny coverage because the insurer had settled with the insured for the damage to his automobile and the insurer had filed a form with the Secretary of State indicating that an insurance policy was in force covering the automobile owner.

*Hays* is distinguishable from the present case on a pivotal point. In *Hays,* the insurer never claimed that the entire policy was void. Instead, it claimed that a particular provision of the policy did not apply, *i.e.,* that the driver had not been a permissive driver within the meaning of the omnibus clause. In the present case, General Casualty claims that Kim was not covered at all by the Policy when the accident occurred. Yet, in direct contradiction to this assertion, General Casualty paid for one of the claims that arose out of the accident. In our opinion, General Casualty is selectively invoking provisions of the rental agreement which suit its willingness to assume liability. General Casualty cannot recognize the validity of the Policy for one claim and then argue that the entire Policy was null and void when another claim arising out of the same incident is made. Accordingly, we find that, by acknowledging coverage under the Policy for the property damage claim, General Casualty acted in a manner to show an intentional relinquishment of any alleged right it may have had to deny coverage and thereby waived that right. See *Chicago College of Osteopathic Medicine v. George A. Fuller Co.* (7th Cir. 1983), 719 F.2d 1335.

Based upon the aforementioned, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.