FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,

v.

Margie ZABORAC, Chester Jacobus, George Baylor, Harry Tarter, Wayne Grove, and Linda Grove, and American Casualty Company of Reading, Pennsylvania, Garnishee, Defendants.

No. 88–1140.

United States District Court, C.D. Illinois, Peoria Division.

Aug. 27, 1991.

## ORDER

MIHM, District Judge.

Before the Court is a Motion by the Garnishee Defendant, American Casualty Company of Reading, Pennsylvania, for summary judgment (# 26) on the claim asserted against it. For the reasons set forth in this opinion, this Motion is granted.

## BACKGROUND

Joe R. Gibson, the original Plaintiff in this action, commenced this action by filing a shareholder derivative complaint against the directors and officers of the bank, Wayne Grove, Linda Grove, Margie Zaborac, Chester Jacobus, George Baylor, and Harry Tarter—in the Circuit Court of the Ninth Judicial District, Fulton County, Illinois, on February 26, 1986. Gibson, now deceased, was a former director and officer of the bank. He resigned as the bank's president in 1978 and as chairman of the board on April 15, 1980. His complaint alleged that the officers and directors had negligently mismanaged the bank in connection with the lending function.

The director's and officer's liability insurance policy, which was issued by American Casualty Company of Reading, Pennsylvania (hereinafter American Casualty), covered the period from July 1, 1985 through

July 1, 1986. The bank notified American Casualty of Gibson's claim during this period. On or about May 20, 1986, American Casualty denied coverage. *See, Zaborac v. American Casualty Company*, 663 F.Supp. 330 (C.D.Ill.1987) (*see,* affidavit of Joe Anthony, FDIC Exhibit 2).

On or about January 9, 1987, the Commissioner of Banks and Trust Companies of the State of Illinois determined that the bank was insolvent and ordered it closed. The FDIC[1] was appointed as receiver of the bank and, in its corporate capacity, acquired the bank's negligence claims against its former directors and officers in a purchase and assumption transaction. On April 15, 1988, the FDIC was substituted for Gibson as the Plaintiff pursuant to Ill.Rev.Stat. ch. 110, ¶ 2–1008(a) (1987). After removing this action to federal court on May 11, 1988, the FDIC filed a complaint alleging, as did Gibson, that the directors and officers had negligently mismanaged the bank in its lending policies and practices. The jurisdiction over the removal and the complaint was based on 28 U.S.C. § 1345 and 12 U.S.C. § 1819. *See also* 12 U.S.C. § 1441a(*l*). The Groves did not answer the complaint, and the FDIC obtained a $1,194,822.27 default judgment against them on October 20, 1989.[2] The FDIC's negligence claim against the other individual Defendants is still pending in this action. Pursuant to Federal Rule of Civil Procedure 69, the FDIC served garnishment summonses and interrogatories on American Casualty to obtain insurance proceeds due to the Groves under the policy as a result of the judgment against them. American Casualty answered the FDIC's interrogatories to the garnishee on February 21, 1990, and asserted the regulatory exclusion (endorsement # 7) and the insured versus insured exclusion (endorsement # 8) as affirmative defenses. American Casualty also asserted endorsement # 13 of the policy as an affirmative de-

---

1. The Federal Deposit Insurance Corporation (FDIC) is a corporation organized under the laws of the United States of America under 12 U.S.C. § 1811 *et seq.* The FDIC brought this action in its corporate capacity.

2. As a result of the Groves' bankruptcy, the FDIC's judgment is not enforceable against them personally and they have not, therefore, taken an active role in this litigation. *See, In re Grove,* 100 B.R. 417 (C.D.Ill.1989).

fense, but that endorsement is not in issue on this motion.

## I. REGULATORY EXCLUSION

American Casualty contends that the regulatory exclusion unambiguously precludes coverage for any claim against directors and officers based upon or attributable to any action by the FDIC in any capacity. In response, the FDIC maintains that the regulatory exclusion does not apply to the FDIC in this case based upon its own terms.

Endorsement # 7, the regulatory exclusion, entitled "Limitation of Coverage" provides:

It is understood and agreed that the insurer shall not be liable to make any payment for loss in connection with any claim made against the directors or officers based upon or attributable to: *any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation*, the Federal Savings and Loan Insurance Corporation, any other depository insurance organization, the Comptroller of the Currency, the Federal Home Loan Bank Board or any other national or state regulatory agency (all of said organizations and agencies hereinafter referred to as "agencies"), *including any type of legal action which such agencies have the legal right to bring as receiver, conservator, liquidator, or otherwise; whether such action or proceeding is brought in the name of such agencies or by or on behalf of such agencies in the name of any other entity or solely in the name of any third party*. All other provisions of the policy remain unchanged.

(*See* Exhibit 1 attached to Document # 31 at endorsement # 7) (emphasis added).

A. *Was This Action or Proceeding Brought by the FDIC as Defined Under the Regulatory Exclusion?*

▇ The FDIC contends that the insurance policy uses two different phrases, *making a claim* and *bringing an action*, which are not defined in the policy and can encompass two different concepts. The FDIC notes that the regulatory exclusion

states that the insurer is not liable for any loss:

In connection with any claim made against the directors or officers based upon or attributable to: any action or proceeding *brought by or on behalf of the Federal Deposit Insurance Corporation. . . .*

The FDIC contends that this exclusion by its own terms does not apply here because this "action" was not "brought by or on behalf of" the FDIC. As acknowledged by both parties in the statement of undisputed facts, the FDIC notes that this action was brought in state court by Mr. Gibson as a shareholder derivative action against the Bank's directors and officers. Also, it notes that, after the FDIC took an assignment of the Bank's assets, it substituted as a Plaintiff in the derivative lawsuit and removed this action to federal court.

Under Illinois law, an action is commenced by filing a complaint with the court, and substitution of parties does not result in the bringing of a new action. *See*, Ill.Rev.Stat. ch. 110, ¶¶ 2–201 and 2–1008. Under federal law, an action is commenced by filing a complaint with the court, and removal does not result in the bring of a new action, even where a party chooses to replead in federal court as all injunctions, orders, and other proceedings occurring in the action prior to its removal remain in full force and effect until dissolved or modified by the district court. *See*, Rule 3 and Rule 81(c) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1450. Further, where there is a transfer of interests in federal court, the action may be continued. Rule 25(c) of the Federal Rules of Civil Procedure.

Interpreting identical exclusionary language under similar circumstances, the district court in *American Casualty Company v. FSLIC*, 683 F.Supp. 1183 (S.D.Ohio 1988), held that American Casualty's regulatory exclusion did not preclude coverage for the FSLIC's claims against former directors and officers of a failed savings and loan institution. In that case, the failed savings and loan itself brought an action

against its former directors and officers in state court. When the savings and loan was declared insolvent, the FSLIC took over the institution, substituted itself as the plaintiff in the lawsuit against the former directors and officers, and removed the action to federal court.

American Casualty, as it does in this case, argued that the FSLIC's substitution as a party plaintiff in conjunction with its removal of the director's and officer's action constituted the bringing of an action in the United States District Court. *Id.* at 1185. Chief Judge Rubin rejected American Casualty's argument in holding that the regulatory exclusion did not negate coverage because the action was brought by the failed institution and not by the FSLIC. The judge explained, stating that:

> To "bring" an action or suit refers to the initiation, not the maintenance, (footnote omitted) of legal proceedings. *Black's Law Dictionary*, [5th Ed.], 174 (1977). Moreover, a suit is "brought" at the time it is commenced. *Id.; Goldenberg v. Murphy*, 108 U.S. 162, 2 S.Ct. 388, 27 L.Ed. 686 (1883). The phrase "on behalf of" is defined as "in the interest of: as a representative of." *Webster's Ninth New Collegiate Dictionary*, at 141 (1983). Clearly, [the bank] did not bring the [directors and officers] action in the interest of or as a representative of FSLIC which had not yet been appointed as receiver. (Footnote omitted). Such a reading is absurd.

*Id.* Judge Rubin further rejected American Casualty's contention that maintaining a pre-existing suit is the same as bringing an original action:

> Plaintiffs suggest that "maintain" is a synonym for "brought." To "maintain" a suit, however, means to uphold, continue on foot and keep from collapse a suit already begun. *Smallwood v. Gallardo*, 275 U.S. 56, 61, 48 S.Ct. 23 [24], 72 L.Ed. 152 (1927); *see also, George Moore Ice Cream Company v. Rose*, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265 (1933).

*Id.* at n. 2. Finally, the judge rejected American Casualty's contention that its intent was to exclude coverage for all suits to which a government regulatory agency is a party in stating:

> Indeed, the intention of the parties must control in insurance contract, however, "this intent must be demonstrated from the written contractual matter expressed by the parties as contained in the policy of insurance." (Citations omitted). Furthermore, when words used in an insurance contract have a plain, ordinary and unambiguous meaning the court may not resort to construction of such contract. (Citation omitted). The language in the regulatory exclusion provision of the policy is clear and unambiguous. Claims arising from the [directors and officers] action are not excluded from coverage under the plain meaning of the regulatory exclusion.

*Id.* at 1185–1186.

This Court disagrees with the findings of the court in the *American Casualty* case. *Id.* This Court believes that the construction suggested by the FDIC and the court in the *American Casualty* case is technical and unreasonable. In the case of *Gary v. American Casualty Company of Reading, Pennsylvania*, 753 F.Supp. 1547, 1550–1551 (W.D.Okl.1990), in interpreting an identical regulatory exclusion under similar facts, the court stated:

> Although the language "based upon or attributable to" is awkward when used in conjunction with the language "any action or proceeding brought by or on behalf of the Federal Deposit Insurance Corporation" the court finds the FDIC's construction of this exclusion to be strained and unreasonable. (Footnote omitted). *Reading the endorsement as a whole, without placing undue emphasis on the words "based upon or attributable to," it is clear that the insured's intent was to exclude coverage for any loss resulting from any action brought by or on behalf of the FDIC in any capacity against a bank director or officer.* (Footnote omitted). *Accord, Continental Casualty Company v. Allen*, 710 F.Supp. 1088, 1097 (N.D.Tex.1987) (holding that the language in an identical endorsement in an MGIC-issued 1983 D and O liability policy "*is not ambigu-*

ous"). *See also, McCuen v. International Insurance Company,* No. 87–54–D, slip op. (S.D. Iowa, Sept. 29, 1988). *Contra, American Casualty Company of Reading, Pennsylvania v. Federal Deposit Insurance Corporation,* 677 F.Supp. 600, 603–604 (N.D.Iowa [1987]) (holding that the identical exclusion endorsement is ambiguous, susceptible to the interpretation urged by both the FDIC and ACCO therein, also urged herein).

(*See* Exhibit attached to document # 32, Motion of American Casualty for leave to file a reply in support of its Motion for Summary Judgment) (emphasis added).[3]

This Court adopts the holding and reasoning of the *Gary* court on the regulatory exclusion and holds that this exclusion unambiguously excludes coverage when read as a whole. *See also, FDIC v. Bowen,* Nos. 88 CV 16746 and 89 CV 12616, slip op. at 5 (July 18, 1991, Colo.Ct. of App). This Court would note that the latter part of the regulatory exclusion states that it includes any type of legal actions which the FDIC had a right to bring whether it was brought in the name of the agency, on behalf of the agency in the name of another entity, or on behalf of a third party. (See earlier quotation of the regulatory exclusion). Clearly, this exclusion was intended to bar any action brought or maintained by the FDIC or other regulatory agency. Simply because the FDIC did not technically "bring" this action and is only "maintaining" this action does not mean that the FDIC can escape the plain intent of the regulatory exclusion.

**B. Does the Regulatory Exclusion Unambiguously Exclude Losses Directly Caused by an FDIC Action?**

▇▇▇ Next, the FDIC contends that, even if it had initially "brought" the action against the Groves, the literal language of American Casualty's regulatory exclusion does not apply here. Specifically, in its brief, the FDIC asserts that:

> The exclusion bars coverage for losses in connection with (1) any *claim* made against the directors or officers based upon or attributable to: (2) *any action or proceeding* brought by or on behalf of the FDIC. Read literally, the regulatory exclusion does not exclude losses based upon or attributable to an action brought by or on behalf of the FDIC itself. Rather, it excludes only losses in connection with "secondary" *claims* against the directors or officers which are in some manner based upon or attributable to actions or proceedings brought by the FDIC.

(*See* Defendants' Memorandum in Opposition to American Casualty's Motion for Summary Judgment, document # 28 at 6–7).

The FDIC maintains that this "secondary liability" interpretation of the same regulatory exclusion language at issue here has been accepted as reasonable by at least one federal district court which refused to enforce the exclusion because of its ambiguity. *See, Mmahat,* 1988 WL 19304 at 2.[4]

This Court does not agree with the proposition that the regulatory exclusion unam-

---

**3.** Other courts have found that the regulatory exclusion at issue in this case is ambiguous because both the interpretation given to the clause in the *Gary* case and the interpretation given in the *American Casualty Company of Reading, Pennsylvania v. FSLIC,* 683 F.Supp. 1183, are reasonable; therefore, those courts have concluded that this clause is ambiguous. *See, FSLIC v. Heidrick,* 774 F.Supp. 352 (D.Md. 1991) (Exhibit attached to document # 37, a letter to the Court regarding relevant authority); *American Casualty v. FDIC,* 677 F.Supp. 600, 603–604 (N.D.Iowa 1987), *rev'd by American Casualty v. FDIC,* Case No. 86–4018, 1990 WL 66505 (N.D.Iowa 1990) (*see* Exhibit 5 attached to

document # 31) (the district court reversed its interpretation and found that the regulatory exclusion unambiguously excluded claims by the FDIC); *FSLIC v. Mmahat,* slip op. 86–5160, 1988 WL 19304 at 11 (E.D.La.1988).

**4.** In reaching the conclusion that the regulatory exclusion could be reasonably read to apply only to secondary suits, the *Mmahat* court cited the decision in *American Casualty Company v. FDIC,* 677 F.Supp. 600 (N.D.Iowa 1987). This Iowa court later reversed its conclusion in *American Casualty Company v. FDIC,* Case No. 86–4018, at p. 11 (N.D.Iowa, Feb. 26, 1990) (Exhibit 5 attached to document # 31) (1990 WL 66505).

biguously excludes only losses in connection with secondary claims against the directors or officers which are in some manner based upon or attributable to actions or proceedings brought by the FDIC. The plain and ordinary reading of the regulatory exclusion includes direct claims or actions by the FDIC against the directors or officers. *See, Continental Casualty Co. v. Allen,* 710 F.Supp. 1088, 1097–1098 (N.D.Tex.1989).

## II. INSURED V. INSURED EXCLUSION

In the American Casualty insurance policy there is an insured versus insured exclusion which precludes coverage for loss based upon a claim by an insured—the Bank or a director or an officer—against another insured. In this case, the original suit was a derivative suit brought by Joe Gibson for the use and benefit of the State Bank of Cuba. American Casualty asserts that the exclusion applied to that suit because, although it was a shareholder derivative suit, it was brought by a shareholder who had also been an officer and director under its policy so that he was an insured under the policy.

The FDIC contends that American Casualty's arguments are flawed in two respects. First, the FDIC asserts that, even if potential losses were not covered by virtue of the insured versus insured exclusion when Gibson brought the action, the exclusion does not apply to losses incurred after the FDIC was substituted as the Plaintiff. Second, the FDIC maintains that whether Joe Gibson was an insured under the policy is ambiguous; therefore, that ambiguity must be resolved in favor of coverage.

Endorsement # 8, the insured versus insured exclusion, provides as follows:

It is understood and agreed that the insurer shall not be liable to make any payment for loss, as defined in clause D hereof, which is based upon or attributable to any claim made against any director or officer by any other director or officer or by the institution defined in clause 1(a) of the policy (hereinafter called "institution") except for a share-

holder derivative action brought by a shareholder of the institution other than an insured.

(*See,* Endorsement # 8 to Exhibit 1 attached to Document # 31) (emphasis added).

Endorsement # 4, the amended definition of director and officers, states:

It is understood and agreed that clause 1(b) of the policy is hereby amended to read as follows: *(1)(d) the term "directors and officers" shall mean all persons who were, now are, or shall be directors and/or officers of the financial institution."*

(Endorsement # 4, Exhibit 1 attached to Document # 31) (emphasis added).

### A. *Does the Insured Versus Insured Exclusion Apply to the FDIC Acting in its Corporate Capacity?*

The FDIC notes that the insured versus insured exclusion nowhere mentions the FDIC. Further, it asserts that the FDIC is not "the institution defined in clause 1(a)" policy, nor is the FDIC a "director or officer." In addition, it contends that the exclusion applies only to losses based upon or attributable to actions and not to losses based upon or attributable to claims. Under the policy, the FDIC maintains that more than "one claim" may be made for the same "wrongful acts." Thus, the FDIC argues that the loss for which it seeks coverage is one which is based upon and attributable to the claim the FDIC made after it substituted as a Plaintiff in the action and not upon the claim that Gibson made when he brought the action.

In *Fidelity and Deposit Company v. Zandstra,* 756 F.Supp. 429 (N.D.Cal.1990) (Exhibit 6 attached to Document # 31), the court held that a similarly worded insured versus insured exclusion did not apply where a lawsuit initiated by a bank against its former directors and officers was taken over by the FDIC after the bank failed. The *Zandstra* court held that excluding claims by the FDIC would not serve the purpose of the insured versus insured clause, which was to prevent collusive lawsuits. *Id.,* at 432; *accord, Conklin Com-*

*pany v. National Union Fire Insurance Company*, Case No. 4–86–860, 1987 WL 108957 (D.Minn., Jan. 28, 1987) (1987 U.S. Dist. Lexis 12337) (purpose of exclusion is to prevent collusive lawsuits) (*see*, Exhibit 7 attached to Document # 31); *American Casualty Company v. FDIC*, slip op. at 31 n. 25 (purpose to exclude "internecine warfare and collusive suits") (*see*, Exhibit 5 attached to Document # 31). The *Zandstra* court reasoned:

> There can be no real dispute that the FDIC is a genuinely adverse party to the defendant officers and directors. While Fidelity may be correct in its contention that when the underlying actions were originally filed by the new Home State directors in June 1987, the exclusion applied to that action, it does not follow that when the FSLIC took over the action, the exclusion still applied. The exclusion would properly apply to action commenced by new, apparently "clean" board of an insured company because the insurer concerned about collusive suits should not be put to the burden of scrutinizing the membership of each new board, and deciding whether that board is sufficiently "clean" and genuinely adverse to the defendants being used to allay its concerns. Similarly, Fidelity's contention is well-taken that an insured company should not be able to escape the effect of the exclusion merely be selling to some unrelated third party the right to maintain a collusive suit. Here, however, FSLIC (and later FDIC) took over the action under operation of law, pursuant to its statutory mandate to pay insured depositors of the failed S & L "as soon as possible," 12 U.S.C. § 1728(b), and thereafter to maximize Home State's assets and reimburse the expenditures incurred by FSLIC/corporate. *It is clear beyond doubt, and with requiring Fidelity to engage in a close scrutiny, that FSLIC's (and now FDIC's) involvement in the underlying actions is not collusive. The insured versus insured exclusion therefore does not excuse Fidelity from coverage.*

*Id.* at 432 (emphasis added).

This Court disagrees with the conclusion reached by the *Zandstra* court. Certainly, one of the purposes of the insured versus insured clause could be to prevent collusive lawsuits; however, that is not the only possibility. Before a court can start divining the intent behind a clause such as this one, the Court must determine that the clause was ambiguous. This Court does not believe that the clause is in any way ambiguous. The clause unambiguously excludes listed insureds from coverage.

In *Zandstra*, the court basically found that anyone else who steps into the shoes of the bank is precluded from bringing a lawsuit except the FDIC. The reason the FDIC was treated differently in *Zandstra* was because it was clear that a collusive lawsuit was not intended. However, there are other situations in which it is clear that the party assigned the rights to a lawsuit was not bringing it collusively. This fact alone is not enough to treat a party differently under the plain language of the exclusion. Simply stated, if the FDIC merely steps into the shoes of Grove and Grove is precluded from bringing a claim, then the FDIC cannot bring a claim. *See, Gary v. American Casualty Company*, 753 F.Supp. at 1554–1555 (Exhibit attached to Document # 33).

Despite the above difference of opinion, this Court does agree with the finding in *Zandstra* that the FDIC does not merely stand in the shoes of the party under which it assumed the lawsuit. *Zandstra*, at 432–433. As the *Zandstra* court stated:

> "Courts which have analyzed the role of FDIC corporate have recognized for over 40 years that the FDIC does not strictly 'step into the shoes' of a failed bank." *American Casualty Company of Reading, Pennsylvania v. FDIC*, 713 F.Supp. 311, 316 (N.D.Iowa 1988) (*citing, D'Oench, Duhme and Company, Inc. v. FDIC*, 315 U.S. 447, 472–473 [62 S.Ct. 676, 686–687, 86 L.Ed. 956] (1942) (Jackson, J., concurring); *see also, FDIC v. National Union Fire Insurance Company of Pittsburgh*, 630 F.Supp. 1149 (W.D.La.1986). Under statute and regulations, FDIC (and formerly FSLIC) may bring suit not only as a successor to

Home State, and not only on behalf of itself as a creditor, but also on behalf of the creditors and shareholders of Home State, and as subrogee to rights of depositors against Home State. 12 U.S.C. §§ 1821(d), (g), as amended by FIRREA § 212, 103 Stat. 222, 225, 241; 12 U.S.C. § 1823(d)(3) as amended by FIRREA; § 217, 103 Stat. 254; 12 U.S.C. § 1729(b)(2), 1729(c)(1)(B)(i)(II); 12 C.F.R. §§ 548.2(f), 549.3(a), 569a.6(3).

*Id.* In this case, the FDIC does not merely stand in the shoes of Grove, it can also stand in the shoes of the shareholders; therefore, as a shareholder, it has the independent authority to bring a suit against American Casualty.[5] *See also, Branning v. CNA Insurance Companies,* 721 F.Supp. 1180, 1184–1185 (W.D.Wash.1989). Therefore, this Court concludes that the insured versus insured exclusion does not prevent the FDIC from bringing this lawsuit.

B. *Is This American Casualty Policy Ambiguous Regarding Whether Joe Gibson is an Insured Under the Policy?*

■ As an alternative argument, the FDIC argues that the insurance policy is also ambiguous regarding whether Joe Gibson was an insured under the insured versus insured exclusion. The FDIC maintains that whether Gibson is an insured or not is ambiguous because of a discrepancy between the application for insurance, which is expressly incorporated into the policy, and the policy's definition of directors and officers.

The Court rejects this argument. The term "directors and officers" is defined in the policy and articulates the scope of the

people insured. The failure of the Bank to list all former directors in a renewal application cannot does not change the terms of the policy.

## III. DO THE EXCLUSIONS IN THE AMERICAN CASUALTY POLICY VIOLATE PUBLIC POLICY?

■ Even if the regulatory exclusion and the insured versus insured exclusion unambiguously excluded coverage for the FDIC's judgment against the Groves, the FDIC asserts that these exclusions cannot be applied against the FDIC because doing so would violate federal statutes and federal public policy. The FDIC maintains that contract construction and enforceability is limited by the interests of public policy. *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83–84, 102 S.Ct. 851, 859–860, 70 L.Ed.2d 833 (1982). Since the FDIC is a party in this case, it asserts that the insurance coverage dispute in this case arises under federal and not state law. *See,* 12 U.S.C. § 1819(b)(2) (1990).[6] Further, the FDIC notes that, as a matter of Illinois law, contracts that violate federal public policy are not enforceable. *See, American Buyers Club, Inc. v. Grayling,* 53 Ill.App.3d 611, 368 N.E.2d 1057, 1059, 11 Ill.Dec. 449, 451 (5th Dist.1977).

In this case, the FDIC obtained its judgment against the Groves in its corporate capacity. As the FDIC notes, in this capacity under the federal statutes, the FDIC has:

All rights, titles, powers and privileges of the insured depository institution, and of any stockholder, member, account holder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution.

---

5. American Casualty notes that at the time the Bank was closed no uninsured shareholder had brought a derivative action and that the policy was no longer in force after the policy was terminated on July 1, 1986. However, under clause 6(a) of the policy, if American Casualty has notice of a claim against the Bank's directors or officers during the policy period, "any claim which may subsequently be made against the directors or officers arising out of such wrongful act shall, for purposes of this policy, be treated as a claim made during the policy year in which such notice was given." Since

there is no dispute that American Casualty was properly notified of Mr. Gibson's claim, the FDIC's claim as a shareholder in a derivative action against American Casualty must be treated as being made under the policy.

6. Before the Financial Institution's Reform, Recovery, and Enforcement Act of 1989 (hereinafter referred to FIRREA) (12 U.S.C. § 1811 *et seq.*) was enacted on August 9, 1989, the applicable provision was 12 U.S.C. § 1819 (4th).

*See,* 12 U.S.C. § 1821(d)(2)(A)(i) (capacity of FDIC as receiver) and § 1823(d) (FDIC's corporate capacity). Any stockholder of the Bank in this case had the right and the power to sue the Groves derivatively for wrongful acts alleged in this action. The American Casualty policy provides coverage for shareholder derivative claims so that any stockholder who obtains a judgment in such an action as the right and the power to garnish the proceeds of the policy to satisfy the judgment. Because federal law gives the FDIC the same rights and powers as these stockholders, the FDIC contends that the regulatory and insured versus insured exclusions cannot be enforced against the FDIC because doing so would deprive the FDIC of the rights and power conferred on it by statute. Under federal law, the FDIC maintains that the exclusions which purport to bar coverage solely on the basis of the identity of the party making the claim, the FDIC, and not because of the nature of the insured's wrongful acts is void as against public policy.

The court in *Branning v. CNA Insurance Companies,* 721 F.Supp. 1180, 1184 (W.D.Wash.1989) stated supporting this argument:

> If the court were to enforce the FSLIC exclusion as written, all of FSLIC's claims, regardless of their origin or status under the policy, would not be covered simply because FSLIC rather than a shareholder, depositor, or third party prosecuted the claim. Private parties to an insurance contract might not frustrate the congressional purpose behind receivership by annulling FSLIC's federal powers. *FSLIC v. Oldenburg,* 671 F.Supp. 720, 723 (D.Utah 1987) (footnote omitted).

This Court disagrees with the FDIC and the court's conclusion in the *Branning* and *Oldenburg* cases because this Court simply does not believe that the regulatory exclusion excluding the FDIC undermines any congressional purpose or that it annuls the FDIC's powers. In this case, the FDIC assumed all of the rights given under the insurance policy. However, the insurance policy did not give the FDIC the right to recover under the policy. No rights have been taken away from the FDIC. The FDIC simply did not have the right to sue under the policy because the Bank did not contractually negotiate for this type of coverage. Presumably, the reason the Bank did not request this coverage was because the costs of the additional coverage were higher or because this type of coverage was unavailable.[7]

If this Court were to find that the FDIC was covered where there was an unambiguous exclusion of coverage, the FDIC would acquire greater rights under the contract than the Bank had originally bargained for. This Court, therefore, cannot conclude that Congress would mandate coverage based upon the general statement of the FDIC's rights and powers.

Furthermore, as one court has noted:

> For contractual provisions to be void for public policy reasons, they must be injurious of the public good or be subversive to sound morality. *Ritter v. Mutual Life Ins. Co.,* 169 U.S. 139, 154, 18 S.Ct. 300, 305, 42 L.Ed. 693 (1898). Thus, the most often found violators of public policy are contracts that induce criminal conduct or are contrary to statutory law. *Northwestern Mut. Life Ins. Co. v. McCue,* 223 U.S. 234, 245–46, 32 S.Ct. 220, 221–22, 56 L.Ed. 57, 419 (1911) (criminal conduct); *Connolly v. Union Sewer Pipe Co.,* 184 U.S. 540, 548, 22 S.Ct. 431, 435, 46 L.Ed. 679 (1902) (contravene statutory law). (Footnote omitted).

The Court finds that neither Endorsement 1 nor 3 meets such a standard. No statutory insurance minimum exists in the case at bar which the 1983 Policy with its endorsements would violate. Rather directors' and officers' liability insurance is optional under all the rules and regulations promulgated by the various regulatory agencies of the Bank.

---

**7.** Exclusions of particular persons or entities from coverage is typical and proper in insurance policies because of the different costs and risks associated with covering different types of parties and litigating with different plaintiffs.

(Footnote omitted). *Thus policies providing limited insurance, which are not required by statute or mandated as to form of coverage, are not invalidated on a public policy argument. Simons v. City of Columbus,* 593 F.Supp. 876, 880–81 (N.D.Miss.1984), *aff'd,* 805 F.2d 1031 (5th Cir.1986) (contract exclusions do not violate public policy).

*Continental Casualty Co. v. Allen,* 710 F.Supp. 1088, 1098–1099 (N.D.Tex.1989) (emphasis added).

In addition, despite the fact that the FDIC has rule-making power by which it could require institutions to carry director's and officer's liability insurance (*see,* 12 U.S.C. § 1819), the FDIC has failed to use this rule-making power to include a requirement that institutions have coverage which does not have the regulatory exclusion.

Moreover, the public policy rationale accepted in *Oldenburg* has been sharply criticized and rejected for analogous coverage matters in *FDIC v. Aetna Casualty and Surety Company,* 903 F.2d 1073, 1079 (6th Cir.1990). In *Aetna,* the FDIC sought coverage under two banker's blanket bonds issued by Aetna. Discovery of the claimed loss did not occur until after the FDIC took over the bank. Aetna denied coverage on grounds that any loss was excluded because the bond was terminated immediately upon taking over of the insured by a receiver or other liquidator. The FDIC argued that the termination provision was contrary to public policy. The district court accepted this argument.

The Sixth Circuit rejected the public policy argument and held:

Insurance policies which have sections limiting coverage are not contrary to public policy *where such policies are not required by statute and where the form of coverage has not been mandated.* (Citation omitted).

*Id.* at 1078 (emphasis added). The court went on to note that since there was no existing law which would justify the invalidation of the termination provisions, the dominant public policy was that the parties'

freedom of contract should not be destroyed. *Id.*

The FDIC attempts to distinguish *Aetna* by arguing that the case involved banker's blanket bond coverage which totally terminated coverage rather than director's and officer's liability coverage which only partially terminated coverage. Further, the FDIC asserts that the exclusion discriminates against the FDIC as a shareholder derivative plaintiff as opposed to other shareholder derivative plaintiffs.

This Court does not find the argument that this case involves a partial exclusion of coverage rather than a total exclusion of coverage significant. Also, it is reasonable and often necessary for insurance companies to exclude certain types of plaintiffs from coverage because, as stated earlier, there are different risks and costs involved in covering and litigating with different plaintiffs.

Further, this Court does not believe that it should invalidate an exclusion where there is not clear public policy interest. The Supreme Court has stated:

Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. (Citation omitted). *As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.* (Citations omitted).

*Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945) (emphasis added). As American Casualty suggests, to invalid its exclusions in this case on grounds of public policy would be tantamount to performing what is properly a legislative function. The FDIC's claim that these exclusions hinder it from performing its statutory function are adequately rebutted by American Casualty's assertion that:

If the FDIC is allowed to enforce any contract entered into by the Bank, notwithstanding any provision of the contract providing for termination, default, acceleration or exercise of rights upon or

solely by reasons of insolvency or the appointment of a conservator receiver, no troubled or problem bank would be able to purchase a fidelity bond at any price, this causing more banks to fail and more direct loss to the FDIC insurance fund. *The effect of the contractual provision that limits the FDIC from making such claims is to increase the availability and decrease cost of bonds and policies which has a direct impact on the survival of financial institutions.* (*See,* letter from James D. McLaughlin to the FDIC dated February 15, 1990 which is attached to American Casualty's memorandum of law in support of its Motion for Summary Judgment) (emphasis added). A policy question such as whether these exclusions will ultimately benefit or burden the federal banking system is a policy question to be decided by Congress or by an agency under its rule-making power.

## IV. DOES THE REASONABLE EXPECTATIONS DOCTRINE APPLY IN THIS CASE?

In the alternative, the FDIC has made a motion under Rule 56(f) of the Federal Rules of Civil Procedure requesting more discovery to determine whether the exclusions in the policy were contrary to the reasonable expectations of the insured under federal common law or whether the exclusions unreasonably and deceptively affected the risk under Illinois law (*see,* Ill. Rev.Stat. ch. 73, ¶ 755(2)). *See also, American Casualty v. FDIC,* Case No. 86–4018 (N.D.Iowa, Feb. 26, 1990) (1990 WL 66505 at 14–15); *Standard Mutual Insurance v. General Casualty Companies,* 171 Ill. App.3d 758, 525 N.E.2d 965, 121 Ill.Dec. 658 (1st Dist.1988), *appeal denied,* 122 Ill.2d 594, 530 N.E.2d 265 (1988). The FDIC has submitted an affidavit under Rule 56(f) stating that it is presently unable to present facts essential to justify its opposition to American Casualty's Motion for Summary Judgment on the above grounds until it has received certain documents which American Casualty has refused to produce and until it has deposed certain individuals regarding what their reasonable expectations of coverage were

under the policy. (*See,* Exhibit 12 attached to Document 31).

■ American Casualty asserts that there is no federal common law supporting a reasonable expectations doctrine. This Court agrees. Although the courts in *Hancock Laboratories, Inc. v. Admiral Insurance Company,* 777 F.2d 520, 523 n. 5 (9th Cir.1985) and *Keene Corp. v. Insurance Company of North America,* 667 F.2d 1034, 1041–1042 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982) recognized the reasonable expectations doctrine, they did not recognize the doctrine as a doctrine of federal common law. Rather, they recognized the doctrine in diversity cases in applying a state's product liability law.

■ In addition, it is not readily apparent that Illinois would apply the reasonable expectations doctrine. The FDIC suggests that Ill.Rev.Stat. ch. 73, ¶ 755(2) provides a basis for the application of the reasonable expectations doctrine. However, the very title of the section "Casualty, Fire and Marine" suggests that this section should not even be applied to other types of insurance policies such as the director's and officer's liability insurance policy in this case. *Id.* Further, under the section cited by the FDIC, the director of the Illinois Department of Insurance is given the responsibility for monitoring policy terms and conditions. *Id.* Under this section, when the director finds that policy terms and conditions unreasonably or deceptively affect risk assumed by the policy, the director is empowered to act. *Id.* In this case, there is no evidence that the director has ever found the exclusions in this case to be unreasonable or deceptive. Moreover, subsection 3 of ch. 73, ¶ 755 states:

> This section shall not apply to surety contracts or fidelity bonds nor to riders or endorsements prepared to meet special, unusual, peculiar or extraordinary conditions applying to an individual risk.

Although the parties have not mentioned this point, a director's and officer's insurance policy is a fidelity bond. *See, Black's Law Dictionary,* 5th Ed. Therefore, ¶ 755

could not apply to a director's and officer's insurance policy.

Furthermore, the two Illinois cases cited by the FDIC, *Standard Mutual Insurance Company v. General Casualty Companies*, 171 Ill.App.3d 758, 525 N.E.2d 965, 121 Ill.Dec. 658 (1st Dist.1988) and *Fidelity General Insurance Company v. Nelsen Steel and Wire Company*, 132 Ill.App.2d 635, 270 N.E.2d 616 (1st Dist.1971) are distinguishable because they involved cases where Illinois courts held that the provisions of a liability policy for a rental automobile were unenforceable based upon the ambiguity in the policies and based upon public policy under ch. 73, ¶ 755(2). These cases clearly involved casualty-type insurance, whereas this case involved director's and officer's liability insurance.

Furthermore, most Illinois courts have rejected any doctrine which conflicts with the traditional principle that unambiguous policy language must be given effect. *Bain v. Benefit Trust Life Insurance Company*, 123 Ill.App.3d 1025, 463 N.E.2d 1082, 1086, 79 Ill.Dec. 528, 532 (5th Dist. 1984) (the reasonable expectations doctrine has not been adopted in Illinois); *American Country Insurance v. Cash*, 171 Ill. App.3d 9, 524 N.E.2d 1016, 1018, 120 Ill. Dec. 834, 836 (1st Dist.1988) (Illinois courts have declined to apply the reasonable expectation doctrine to insurance contract); *Zurich Insurance v. Northbrook Excess and Surplus*, 145 Ill.App.3d 175, 494 N.E.2d 634, 645, 98 Ill.Dec. 512, 523 (1st Dist.1986) (the reasonable expectation doctrine is not recognized in Illinois). In addition, one Illinois court noted that, although a number of states have adopted the reasonable expectations doctrine in one form or another, in nearly every case it has been used as a rule of construction. *Insurance Company of North America v. Adkisson*, 121 Ill.App.3d 224, 459 N.E.2d 310, 313, 76 Ill.Dec. 673, 676 (3rd Dist.1984). The court then noted:

> Apart from the question of ambiguity, if such a principle is to become the law of Illinois generally, it is not the province of this court so to say.

*Id.*

Therefore, from an examination of the cited cases, this Court concludes that the reasonable expectations doctrine is not applicable in this case.

## CONCLUSION

Based upon the foregoing, this Court GRANTS the Defendants' Motion for Summary Judgment (# 26). The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiffs.